# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT LEONE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| TOWANDA BOROUGH, | ) | JUDGE _____ |
| COMMANDING OFFICER OF | ) | |
| TOWANDA STATION- | ) | |
| PENNSYLVANIA STATE POLICE | ) | **JURY TRIAL DEMANDED** |
| TROOP P, CORPORAL ROGER | ) | |
| STIPCAK, TROOPER SCOTT RENFER, | ) | |
| TROOPER ANDREW BURIAN, | ) | **ELECTRONICALLY FILED** |
| TROOPER MATTHEW KNOCK, | ) | |
| TROOPER THAD WARNICK, | ) | |
| TROOPER TIMOTHY YOUNG, | ) | |
| TROOPER JOHN DOE, TROOPER JANE | ) | |
| DOE, CORPORAL THOMAS G. | ) | |
| JORDAN, PATROLMAN JOHN | ) | |
| WERNER, and PATROLMAN DAVID | ) | |
| LANTZ, | ) | |

Defendants.

## COMPLAINT IN CIVIL ACTION

Plaintiff Robert Leone, by his undersigned counsel, hereby files his Complaint in Civil

Action, of which the following is a statement:

## I.     INTRODUCTION

1.     This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and

1988, as well as the Fourth and Fourteenth Amendments to the United States Constitution, and

under the common law of the Commonwealth of Pennsylvania, against Towanda Borough, the

Pennsylvania state trooper in command of the Towanda Station in his individual capacity, as

well as the following Pennsylvania State Troopers and Towanda Borough Police Officers in their individual capacities: Trooper Roger Stipcak, Cpl., Trooper Scott Renfer, Trooper Andrew Burian, Trooper Matthew Knock, Trooper Thad Warnick, Trooper Timothy Young, Trooper John Doe, Trooper Jane Doe, Trooper Thomas G. Jordan, Cpl., Patrolman John Werner and Patrolman David Lantz.

2.      It is alleged that the individual state trooper and police officer defendants violated Robert Leone's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and that the individuals severely assaulted, battered and otherwise abused Mr. Leone and/or failed to prevent this conduct despite their duty to protect him and numerous, reasonable opportunities to do so. It is further alleged that these violations and torts were committed as a result of, *inter alia,* formal and informal policies and customs and the lack of proper training, supervision, discipline and oversight on the part of Towanda Borough, Corporal Thomas G. Jordan of the Bureau of Integrity and Professional Standards and the commanding officer of the Pennsylvania State Police facility know as Towanda Station, all of which evidenced a deliberate indifference to Plaintiff's rights to due process and to be free from unreasonable searches and seizures as protected by the Fourth and Fourteenth Amendments to the United States Constitution.

## II.    JURISDICTION AND VENUE

3.      Jurisdiction of this Court is based on 28 U.S.C. §§ 1331, 1332(a)(1), and 1343, and on the supplemental jurisdiction of this Court to entertain claims arising under state law.

4.      The parties are of diverse citizenship, and the amount in controversy in this Complaint exceeds $75,000. Jurisdiction over this Complaint therefore exists pursuant to 28 U.S.C. §1332(a)(1).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the defendants exist, reside, and/or are employed in this district and the events which gave rise to the claims asserted in this Complaint occurred in this district.

### III.   PARTIES

6.     Plaintiff Robert Leone was at all material times a resident and citizen of Vestal, New York and of full age.

7.     Defendant Towanda Borough, Pennsylvania (or "the Borough") is a governmental entity organized under the Constitution and laws of the Commonwealth of Pennsylvania, possessing legal personhood within the meaning of 42 U.S.C. § 1983.  The Borough, by and through the Towanda Borough Police Department, is responsible for promulgating, executing and administering the laws, customs, practices and polices at issue in this lawsuit.  At all times material hereto, the Borough was the public employer of the police officers named in this lawsuit.

8.     Defendant Commanding Officer of Towanda Station-Pennsylvania State Police Troop P ("Commanding Officer") is an adult individual, who was at all times material hereto employed by the Pennsylvania State Police.  Part of the Commanding Officer's duties included the supervision of the troopers assigned to the Towanda Station, and he was personally involved with the incidents alleged herein.  He was also responsible for promulgating, executing and administering the laws, customs, practices and policies at issue in this lawsuit.  Upon information and belief, Commanding Officer is a citizen of Pennsylvania. The Commanding Officer is sued in his individual capacity.

9.     Defendant Corporal Roger Stipcak is an adult individual who was at all times material hereto employed by the Pennsylvania State Police and acting in that capacity. Upon

3

information and belief, Defendant Stipcak is a citizen of Pennsylvania. Corporal Stipcak is sued in his individual capacity.

10. Defendant Scott Renfer is an adult individual who was at all times material hereto employed by the Pennsylvania State Police, Towanda Station, and acting in that capacity. Upon information and belief, Defendant Renfer is a citizen of Pennsylvania. Trooper Renfer is sued in his individual capacity.

11. Defendant Andrew Burian is an adult individual who was at all times material hereto employed by the Pennsylvania State Police and acting in that capacity. Upon information and belief, Defendant Burian is a citizen of Pennsylvania. Trooper Burian is sued in his individual capacity.

12. Defendant Matthew Knock is an adult individual who was at all times material hereto employed by the Pennsylvania State Police and acting in that capacity. Upon information and belief, Defendant Knock is a citizen of Pennsylvania. Trooper Knock is sued in his individual capacity.

13. Defendant Thad Warnick is an adult individual who was at all times material hereto employed by the Pennsylvania State Police and acting in that capacity. Upon information and belief, Defendant Warnick is a citizen of Pennsylvania. Trooper Warnick is sued in his individual capacity.

14. Defendant Timothy Young is an adult individual who was at all times material hereto employed by the Pennsylvania State Police and acting in that capacity. Upon information and belief, Defendant Young is a citizen of Pennsylvania. Trooper Young is sued in his individual capacity.

15.     Defendant John Doe is an adult individual who was at all times material hereto employed by the Pennsylvania State Police and acting in that capacity.  Upon information and belief, Defendant John Doe is a citizen of Pennsylvania. Trooper John Doe is sued in his individual capacity.

16.     Defendant Jane Doe is an adult individual who was at all times material hereto employed by the Pennsylvania State Police and acting in that capacity.  Upon information and belief, Defendant Jane is a citizen of Pennsylvania. Trooper Jane Doe is sued in her individual capacity.

17.     Defendant Corporal Thomas G. Jordan is an adult individual who as at all times material hereto employed by the Pennsylvania State Police, Bureau of Integrity and Professional Standards and acting n that capacity.  Upon information and belief, Defendant Jordan is a citizen of Pennsylvania.  Corporal Jordan is sued in his individual capacity.

18.     Defendant John Werner is an adult individual who was at all times material hereto employed by the Towanda Borough Police Department and acting in that capacity.  Upon information and belief, Defendant Werner is a citizen of Pennsylvania. Patrolman Werner is sued in his individual capacity.

19.     Defendant David Lantz is an adult individual who was at all times material hereto employed by the Towanda Borough Police Department and acting in that capacity.  Upon information and belief, Defendant Lantz is a citizen of Pennsylvania. Patrolman Lantz is sued in his individual capacity.

20.     At times the following individuals shall be referred to collectively as the "Individual Defendants":  Trooper Roger Stipcak, Cpl., Trooper Scott Renfer, Trooper Andrew

Burian, Trooper Matthew Knock, Trooper Thad Warnick, Trooper Timothy Young, Trooper John Doe, Trooper Jane Doe, Patrolman John Werner and Patrolman David Lantz.

21.     The Individual Defendants, Corporal Jordan as well as the Commanding Officer were at all times material hereto duly appointed and acting state troopers of the Commonwealth of Pennsylvania or police officers of Towanda Borough, acting under color of law, to wit, under the statutes, regulations, ordinances, policies, customs and usages of the Commonwealth of Pennsylvania and Towanda Borough.

22.     The Individual Defendants, Corporal Jordan as well as the Commanding Officer, were at all times material hereto working in conspiracy with respect to the constitutional violations, common law torts and harm inflicted upon Robert Leone.

## IV.     FACTS

### The Initial Stop of Robert Leone

23.     On or around the evening of March 8, 2010, Mr. Leone decided to go for a scenic drive through the mountains of northeastern Pennsylvania.

24.     While Mr. Leone was driving through Bradford County, Pennsylvania, a marked Pennsylvania State Police car operated by Trooper Renfer drove behind Mr. Leone's vehicle with its lights and sirens activated.

25.     Unbeknownst to Mr. Leone, his vehicle matched the description of a vehicle suspected of being involved in a minor traffic accident.

26.     Mr. Leone had no reason to believe that his was the targeted vehicle.

27.     Shortly thereafter, two additional Pennsylvania State Police cars operated by Troopers Burian and Warnick as well as a Towanda Borough police car operated by Patrolman Lantz joined the low speed pursuit of Mr. Leone.

28.     Further ahead, Corporal Stipcak and Trooper Knock prepared to disable Mr. Leone's vehicle by deploying stop sticks to puncture the tires of Mr. Leone's vehicle.

29.     Mr. Leone drove over the stop sticks which caused all four of his vehicle's tires to gradually deflate.

30.     After Mr. Leone drove over the stop sticks, Corporal Stipcak and Trooper Knock joined the low speed pursuit.

31.     At approximately 9:00 p.m., Corporal Stipcak took the lead pursuit position and intentionally rammed Mr. Leone's vehicle off the road.

32.     Corporal Stipcak's actions caused both his vehicle and Mr. Leone's vehicle to spin out of control and partially off the road.

33.     When the vehicles of Corporal Stipcak and Mr. Leone came to a stop, said vehicles were wedged together, side-by-side with the driver's side of each vehicle touching the other.  Consequently, neither Corporal Stipcak nor Mr. Leone could exit their vehicles through their respective driver side doors.

34.     Corporal Stipcak, Trooper Knock, Trooper Renfer, Trooper Burian, Trooper Warnick and Patrolman Lantz were present at this initial stop.

35.     Upon information and belief, Trooper John Doe and Trooper Jane Doe were present at this initial stop.

### The Initial Assault and Beating of Robert Leone

36.     Mr. Leone's vehicle was quickly surrounded by Troopers Renfer, Knock, Burian and Warnick as well as Patrolman Lantz – some or all of whom had guns drawn and pointed at Mr. Leone.

37.     After Mr. Leone was surrounded and had multiple guns pointed at him, Corporal Stipcak exited his vehicle through his driver side window, jumped onto the hood of Mr. Leone's vehicle, pointed a Taser at Mr. Leone and began shouting at Mr. Leone to exit his vehicle.

38.     Other than shouting for Mr. Leone to get out of his vehicle, Corporal Stipcak failed to give Mr. Leone instructions as to how to precisely exit this vehicle.  For example, Corporal Stipak did not instruct Mr. Leone to exit via the driver side window, the passenger side door, or through the open T-top.

39.     Unable to exit through the driver side of his vehicle and with a Taser and multiple firearms pointed at him, Mr. Leone kept his hands clearly visible and remained seated.  Mr. Leone was uncertain how to exit his vehicle without drawing fire.

40.     While Mr. Leone remained calmly seated with his hands visible, Corporal Stipcak shot Mr. Leone with a Taser device through the open T-top of Mr. Leone's vehicle. Corporal Stipcak immediately shocked Mr. Leone multiple times with the Taser device.

41.     Before Mr. Leone was permitted to recover from being shocked and stunned by Corporal Stipcak's Taser, Trooper Knock, Trooper Renfer, Patrolman Lantz and, upon information and belief, one or more other Individual Defendants forcibly removed Mr. Leone from his vehicle.

42.     Mr. Leone was punched in the head multiple times by Trooper Knock, Trooper Renfer and, upon information and belief, one or more other Individual Defendants as they removed Mr. Leone from his vehicle and threw him to the ground.

43.     While laying facedown on the pavement with Taser probes still embedded in this body, Trooper Knock, Trooper Renfer, Patrolman Lantz and, upon information and belief, one ore more other Individual Defendants continued to punch, kick, stomp and strike Mr. Leone while Corporal Stipcak continued to shock Mr. Leone with his Taser.

44.     For no valid, necessary or proper purpose whatsoever, Corporal Stipcak jumped from the roof of Mr. Leone's vehicle directly onto Mr. Leon's back and violently drove both of his boots into Mr. Leone's body.

45.     Immediately following the stomping of Mr. Leone by Corporal Stipcak, Trooper Knock, Trooper Renfer and one or more other Individual Defendants continued to punch, kick, stomp and strike Mr. Leone while he lay facedown next to his vehicle.

46.     This segment of Mr. Leone's beating was so brutal that Trooper Renfer fractured his own hand by punching Mr. Leone in the head.

47.     Throughout this entire process, Mr. Leone was verbally harassed by the Individual Defendants.

48.     After this initial beating alongside Mr. Leone's vehicle, Mr. Leone was handcuffed behind his back, lifted off of the ground by his handcuffs in an effort to further harm Mr. Leone, and escorted by at least five of the Individual Defendants towards the rear of one of the Pennsylvania State Police vehicles.

49.     Based on information and belief, Trooper Jane Doe and/or Trooper John Doe, who had arrived at the scene, and participated in and/or failed to prevent the numerous violations of Mr. Leone's rights as described herein, despite having a reasonable opportunity to intervene.

50.     Mr. Leone was escorted to the rear of the Pennsylvania State Police vehicle so that his continued abuse and beating would not be captured by the dashboard cameras located in one or more of the other law enforcement vehicles that were on the scene.

51.     In between the beating and verbal harassment at the scene of the traffic stop, Mr. Leone was interrogated by one or more of the Individual Defendants.

52.     While Mr. Leone calmly answered questions (while handcuffed), one of the Individual Defendants informed Mr. Leone that "you've got a long fu--ing night ahead." This statement (along with many more) was recorded by one of the dashboard cameras located in the Pennsylvania State Police vehicles. Upon information and belief, this statement was made in the presence of other Individual Defendants, and thereby evidences the conspiratorial agreement or understanding among the Individual Defendants.

53.     Off camera, Mr. Leone was beaten, abused, hog-tied and placed in the rear of a Pennsylvania State Police car by Corporal Stipcak, Trooper Renfer and one or more other Individual Defendants.

54.     Throughout this savage beating, one or more of the Individual Defendants shot and/or shocked Mr. Leone numerous times with a Taser.

55.     At no time did Mr. Leone struggle, place any of the Individual Defendants in danger, or engage in any behavior that warranted any of the extreme and violent actions of the Individual Defendants.

56.     Despite having reasonable opportunities to protect Mr. Leone and a duty to do so, none of the Individual Defendants who were present at the scene of the traffic stop took any action to prevent or stop the beating and abuse perpetrated on Mr. Leone. Instead, the Individual Defendants actions and inactions demonstrate deliberate indifference to Mr. Leone's clearly established due process rights, right to be free from unreasonable searches and seizures, and right to be free from cruel and unusual punishment.

### Robert Leone's First Trip To the Hospital

57.     Instead of calling an ambulance for Mr. Leone, one or more of the Individual Defendants called an ambulance for Trooper Renfer who had fractured his hand while punching Mr. Leone in the head.

58.     The Individual Defendants did not permit any of the paramedics who responded to the scene of the traffic stop to treat Mr. Leone. Rather, Trooper Renfer was treated at the scene and transported by ambulance to nearby Memorial Hospital located in Towanda, Pennsylvania.

59.     Without the assistance of paramedical personnel, Corporal Stipcak, Trooper Burian, Trooper Knock and, upon information and belief, other Individual Defendants transported Mr. Leone – who remained hog-tied for no valid reason – to Memorial Hospital.

60.     Mr. Leone arrived at Memorial Hospital at approximately 10:20 p.m.

61.     When Mr. Leone arrived at Memorial Hospital, he had a swollen right eye, lacerated wrists, multiple Taser marks, dried blood around his nostrils and bruises on multiple locations of his body.

62.     Although Mr. Leone complained of pain all over his body, hospital personnel characterized Mr. Leone as cooperative and calm.

63. Mr. Leone's neurological assessment was characterized as awake and appropriate.

64. While at Memorial Hospital, Corporal Stipcak, Trooper Burian and, upon information and belief, other Individual Defendants beat Mr. Leone as well as deployed one or more Tasers on him while he laid on a gurney.

65. Specifically, Corporal Stipcak, Trooper Burian and/or one or more Individual Defendants employed the "drive stun" technique on Mr. Leone by driving the Taser into Mr. Leone's body and firing it directly against Mr. Leone's skin.

66. Having already been thoroughly searched, Mr. Leone posed no danger to himself or others while he laid on a hospital gurney.

67. Neither Corporal Stipcak, Trooper Burian nor any of the other Individual Defendants possessed a valid, proper or necessary reason for employing such excessive and savage force on Mr. Leone while he was at Memorial Hospital.

68. Despite having reasonable opportunities to protect Mr. Leone, none of the Individual Defendants who were present at Memorial Hospital took action to prevent or stop the violence and abuse perpetrated on Mr. Leone. Instead, the Individual Officers' actions and inactions demonstrate a deliberate indifference to Mr. Leone's clearly established due process rights, right to be free from unreasonable searches and seizures, and right to be free from cruel and unusual punishment.

## Robert Leone Is Taken To the State Police Barracks, Threatened and Further Abused

69. At approximately 12:45a.m., March 9, 2012, Corporal Stipcak, Trooper Burian, Trooper Knock and, upon information and belief, other Individual Defendants removed Mr.

Leone from Memorial Hospital and transported him to the Pennsylvania State Police facility located just outside of Towanda, Pennsylvania known as Towanda Station ("Towanda Station").

70.     Based on information and belief, the Commanding Officer was present at the Towanda Station, observed obvious signs of excessive force displayed by Mr. Leone's condition and possessed a reasonable opportunity to protect Mr. Leone from further excessive force.

71.     Based on information and belief, the Commanding Officer observed one or more of the Individual Defendants use unlawful and excessive force on Mr. Leone.

72.     Based on information and belief, one or more of the named trooper defendants were present at Towanda Station while Mr. Leone was further beaten and abused.

73.     In furtherance of the conspiracy to deprive Mr. Leone of his constitutional rights and in an effort to dissuade Mr. Leone from subsequently exercising those rights, one or more of the Individual Defendants threatened to kill or permanently injure Mr. Leone.  One or more of the Individual Defendants informed Mr. Leone that his death would be made to look like suicide or an accident.

74.     Shortly after Mr. Leone was transported to Towanda Station, Corporal Stipcak, Trooper Burian and, upon information and belief, one or more Individual Defendants had Mr. Leone arraigned via videoconference in order to conceal Mr. Leone's extensive injuries from the judicial officer. When Mr. Leone moved his body in a manner that exposed his image to the judicial official, the videoconference machine experienced some type of technical failure and the arraignment was stopped by Corporal Stipcak, Trooper Burian and, upon information and belief, one or more Individual Defendants.

75.     After this mysterious technical failure, Corporal Stipcak, Trooper Burian and, upon information and belief, other Individual Defendants shot Mr. Leone with their Tasers and beat him once again.

76.     At no time did the Commanding Officer intervene or otherwise prevent the further abuse of Mr. Leone. To the contrary, the Commanding Officer endorsed this unlawful conduct and acted with deliberate indifference to Mr. Leone's clearly established due process rights, right to be free from unreasonable searches and seizures, and right to be free from cruel and unusual punishment. After the beating at Towanda Station, Corporal Stipcak, Trooper Burian and, upon information and belief, upon information and belief, one or more Individual Defendants decided to transport Mr. Leone to the Bradford County Correctional Facility ("BCCF") where Mr. Leone could be arraigned via videoconference.

77.     Fearing for his life, Mr. Leone attempted to run away once he was led outside by one or more Individual Defendants. Given the fact that Mr. Leone was handcuffed and shackled, he did not (and could not) shuffle very far.

78.     Not only was Mr. Leone handcuffed and shackled, Mr. Leone had already been processed and thoroughly searched for weapons. Clearly, Mr. Leone posed absolutely no danger to Corporal Stipcak, Trooper Burian or anyone else.

79.     Despite posing no realistic threat to the safety of anyone present at the Towanda Station and possessing no ability to escape, Trooper Burian tackled Mr. Leone and sprayed Mr. Leone in the face, eyes and mouth with oleoresin capsicum spray (a.k.a. pepper spray).

80.     While Mr. Leone was handcuffed, shackled, further incapacitated by the effects of pepper spray and laying on the ground, Corporal Stipcak and, upon information and belief, one or more Individual Defendants struck Mr. Leone multiple times with a collapsible, metal baton.

81.     Patrolman Werner assisted Corporal Stipcak and Trooper Burian with this beating that took place at Towanda Station.

82.     Despite being pepper sprayed, not one of the Individual Defendants ameliorated the effects of the pepper spray or allowed Mr. Leone to ameliorate these effects.

83.     Despite having reasonable opportunities to protect Mr. Leone, none of the Individual Defendants who were present at Towanda Station took action to prevent or stop the violence and abuse perpetrated on Mr. Leone.  Instead, the Individual Officers acted with a deliberate indifference to the rights, health and safety of Mr. Leone.

84.     Without the assistance of paramedical personnel, Trooper Burian, Patrolman Werner and, upon information and belief, one or more Individual Defendants transported Mr. Leone to Memorial Hospital for the second time in a span of approximately 7 hours.

### Robert Leone's Second Trip To the Hospital

85.     On March 9, 2010, Mr. Leone arrived at Memorial Hospital at approximately 5:30 a.m.

86.     Mr. Leone's condition required the use of a stretcher to bring Mr. Leone into an examination room.

87.     Mr. Leone had a laceration on his right eyelid and multiple, additional bruises on his back as well as the rear of his extremities.

88.     Mr. Leone complained of a headache and possessed vital signs and behavior indicative of a closed head injury.

89.     Mr. Leone was unable to describe to the hospital personnel the events leading up to his return to the hospital.

90.     At approximately 6:10 a.m., hospital personnel noted that Mr. Leone was shaking and disoriented as to time and events.

91.     Despite the fact that Mr. Leone was exhibiting obvious signs of concussion and other serious injuries, Corporal Stipcak, Trooper Burian and, upon information and belief, one or more Individual Defendants removed Mr. Leone from Memorial Hospital at approximately 6:15 a.m.

92.     Since Mr. Leone was unable to walk on his own, Corporal Stipcak, Trooper Burian and, upon information and belief, one or more Individual Defendants were required to place Mr. Leone in a wheelchair in order to remove him from Memorial Hospital.

93.     After being removed from Memorial Hospital, Corporal Stipcak, Trooper Burian and, upon information and belief, other Individual Defendants transported Mr. Leone back to Towanda Station where Mr. Leone lost consciousness (perhaps not for the first time).

94.     Despite Mr. Leone's loss of consciousness upon his return to Towanda Station, none of the Individual Defendants requested medical assistance for Mr. Leone.

### Robert Leone Is Transported To Bradford County Correctional Facility

95.     Without the assistance of paramedical personnel, Corporal Stipcak, Trooper Burian, Trooper Young and, upon information and belief, one or more Individual Defendants transported Mr. Leone to Bradford County Correctional Facility ("BCCF").

96.     Mr. Leone was helped into BCCF via a wheelchair where he was examined by the facility's medical personnel.

97.     Upon Mr. Leone's initial physical exam, it was noted that Mr. Leone had bruises all over his body and dried blood on his face, nose and around his mouth.

98.    Multiple metal prongs from Taser devices left by one or more of the Individual Defendants were removed from Mr. Leone's body.

99.    As a direct and proximate result of the excessive and punitive force applied to Mr. Leone, Mr. Leone lost consciousness on more than one occasion while in the custody of the Individual Defendants.

100.   The level of force that the Individual Defendants used against Mr. Leone far exceeded what was necessary to arrest and detain Mr. Leone.

101.   The level of force that the Individual Defendants used against Mr. Leone can be classified only as punitive and served no legitimate purpose in his apprehension and detention.

102.   It was objectively unreasonable for the Individual Defendants to use force in the manner outlined above because, *inter alia*:  Mr. Leone immediately surrendered and; at no time after his surrender did Mr. Leone pose a threat to the safety of himself or others.

103.   The Individual Defendants used force with the sole intention of inflicting pain and otherwise punishing Mr. Leone.

104.   The Individual Defendants' actions demonstrate that they were motivated by evil motive or intent, or reckless or callous indifference to Mr. Leone's constitutional rights.

105.   At no time during the events described herein did any of the Individual Defendants or the Commanding Officer attempt to stop the abuse and excessive force perpetrated on Mr. Leone despite numerous opportunities.

106.   Based on information and belief, Corporal Jordan of the Bureau of Integrity and Professional Standards was assigned to investigation, *inter alia*, the techniques and force applied on Mr. Leone.

107.    As part of this interview, Corporal Jordan interviewed the Individual Defendants about this incident.

108.    Based on information and belief, Corporal Jordan interviewed the Commanding Officer about this incident.

109.    Based on information and belief, Corporal Jordan watched video footage, which shows the unjustified abuse and excessive force, described above.

110.    Based on information and belief, Corporal Jordan recommended that no discipline actions or proceedings be taken against the Individual Defendants or the Commanding Officer, despite his viewing clear video evidence of offensive conduct.

111.    Based on information and belief, the Individual Defendants acted in accordance with the formal and informal customs and policies of Towanda Borough, Towanda Station and/or the Pennsylvania State Police when they battered and abused Mr. Leone.  It is reasonable to infer that such policies and customs exist and are enforced by the Commanding Officer and Corporal Jordan in light of the number of Individual Defendants who participated in, witnessed, and ratified the Constitutionally-violative conduct described above.    Further evidencing the existence of custom and policy, the Individual Defendants perpetrated such offensive conduct over a period of nearly nine hours at the roadside, the Memorial Hospital, and the police barracks, with no regard to the presence of other police officers.

112.    Based on information and belief, Towanda Borough and the Commanding Officer were aware of previous incidents where troopers and police officers used force far in excess of that necessary for any legitimate law enforcement purpose.    Towanda Borough and the Commanding Officer were aware of a substantial risk of unnecessary physical harm to individuals located within Towanda Borough and Towanda Station's jurisdiction, but that

Towanda Borough and the Commanding Officer disregarded this risk and failed to take any action or implement any policies regulating the amount of force used by troopers and police officers.

113.    At all times during the events described herein, the Individual Defendants as well as the Commanding Officer and Corporal Jordan were engaged in a conspiracy with the purpose to deprive Plaintiff of his constitutional rights.  Upon information and belief, and based on the concerted actions described above, the Individual Defendants communicated openly by radio device prior to the traffic stop, at which time they agreed to commit the acts described herein with the intention of punishing Plaintiff.  Upon Information and belief, at times when Mr. Leone's attention was diverted due to the assault and Taser shocks, the Individual Defendants communicated directly with each other and agreed, combined, and understood with each other to initiate and continue the assault in deprivation of Plaintiff's Fourth and Fourteenth Amendment rights to due process, to be free from unreasonable searches and seizures, and to be free form cruel and unusual punishment.

114.    Based upon the length of the assault and the uninhibited manner in which the Individual Defendants conducted themselves in front of each other and the Commanding Officer, it may reasonably be inferred that the Individual Defendants and the Commanding Officer had a combination, agreement, or understanding to assault Mr. Leone and deprive him of the above-referenced Fourth and Fourteenth Amendment rights and to conceal the fact that they had deprived him of such rights.

115.    It may be reasonably inferred by the fact that Corporal Jordan filed no charges and issued no reprimands that he agreed, combined, and understood with the Individual

Defendants and Commanding Officer to conceal the clear violations of Mr. Leone's Constitutional rights.

116. As a direct and proximate result of the said acts of the Defendants, Mr. Leone suffered the following injuries and damages:

      a.      Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of his person;

      b.      Physical pain and suffering as well as emotional trauma and suffering;

      c.      Extensive physical and psychological injuries.

117. The actions and/or inaction of the Defendants violated the following clearly established and well settled federal constitutional rights of Mr. Leone:

      a.      Freedom from the unreasonable seizure of his person;

      b.      Freedom from the use of excessive, unreasonable and unjustified force against his person;

      c.      His right to due process as a pretrial detainee.

## COUNT I

### UNREASONABLE SEARCH AND SEIZURE CLAIM
### 42 U.S.C. §1983

**Plaintiff v. The Individual Defendants, Corporal Jordan, and Commanding Officer**

118. Plaintiff incorporates all prior Paragraphs herein as though fully set forth at length.

119.    Mr. Leone claims damages for the injuries set forth above under 42 U.S.C. § 1983 against the Individual Defendants, Corporal Jordan, and Commanding Officer.

120.    The Fourth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment assures Mr. Leone protection from unreasonable seizures of his person.

121.    The level of force that the Individual Defendants used in arresting Mr. Leone was objectively unreasonable and excessive.

122.    In using force as they did, the Individual Defendants, acting under color of state law, violated Mr. Leone's Fourth and Fourteenth Amendments to be free from unreasonable seizures of his person.

123.    The Individual Defendants, Corporal Jordan, and Commanding Officer are jointly and severally liable as co-conspirators and also due to the indivisible nature of many of the injuries they inflicted upon Mr. Leone through concerted action.

124.    As a direct and proximate result of the actions or inactions of the Individual Defendants, Corporal Jordan, and Commanding Officer, Mr. Leone suffered extensive physical and psychological injuries as well as continued pain and suffering.

WHEREFORE, Mr. Leone demands judgment against the Individual Defendants, Corporal Jordan, and Commanding Officer, jointly and severally, for compensatory damages, punitive damages, attorney fees, interest, and costs of suit, and such other relief as this Honorable Court deems fitting and proper.

## COUNT II
## UNREASONABLE SEARCH AND SEIZURE CLAIM
## 42 U.S.C. §1983

### Plaintiff v. Commanding Officer

125.    Plaintiff incorporates all prior Paragraphs herein as though fully set forth at length.

126.    Prior to March 8, 2010, the Commanding Officer implemented policies, regulations and customs mandating that troopers under his command, including those named in this lawsuit, to use excessive force in arresting and detaining Mr. Leone.

127.    Alternatively, the Commanding Officer's failure to act in response to other egregious acts of excessive force by troopers under his command demonstrates a deliberate indifference to Mr. Leone's right to be free from unreasonable seizures of his person.

128.    The Commanding Officer knew or should have known that one or more of the Individual Defendants were unstable, dangerous and/or had propensities for the abuse of power, brutality, excessive force and the disregard of citizens' constitutional rights.

129.    The Commanding Officer witnessed, first hand, some portion of the excessive force applied to Mr. Leone.    At the very least, the Commanding Officer observed the physical injuries inflicted upon Mr. Leone by the application of excessive force and the violation of his constitutional rights.

130.    At no time did the Commanding Officer order any of the Individual Defendants to refrain from the further beating and abuse of Mr. Leone.

131.    The Commanding Officer permitted, assisted with, approved, endorsed, tolerated and/or acquiesced to the violations of Mr. Leone's constitutional rights by the Individual Defendants.

132. The Commanding Officer failed to prevent the violation of Mr. Leone's constitutional rights.

133. The Commanding Officer failed to punish or discipline any of the Individual Defendants who violated Mr. Leone's constitutional rights.

134. The Commanding Officer failed to exercise his duty to supervise the troopers under his control.

135. By ultimately ratifying the conduct of the Individual Defendants as described herein, the Commanding Officer is joint and severally liable as a co-conspirator for the damages suffered by Mr. Leone by virtue of the violation of his constitutional rights.

136. The Commanding Officer failed to implement and maintain a training program designed to avoid the type of wrongful and unconstitutional conduct described herein. This failure on the part of the Commanding Officer was of such an egregious and pervasive nature as to constitute a reckless or callous indifference to the rights of citizens generally and Mr. Leone specifically.

137. As a result of the Commanding Officer's failure to properly supervise and/or train the troopers under his command, the troopers working from Towanda Station, including those named in this lawsuit, believed that misconduct would be tolerated rather than investigated and sanctioned.

138. Coupled with the Commanding Officer's failure to act in response to other egregious acts of excessive force by troopers demonstrates a deliberate indifference to Mr. Leone's constitutional right to be free from unreasonable seizures of the person.

139.    As a direct and proximate result of the Commanding Officer's action and/or inaction, Mr. Leone suffered extensive physical and psychological injuries as well as continued pain and suffering.

WHEREFORE, Mr. Leone demands judgment against the Commanding Officer for compensatory damages, punitive damages, attorney fees, interest, and costs of suit, and such other relief as this Honorable Court deems fitting and proper.

**COUNT III**
**UNREASONABLE SEARCH AND SEIZURE CLAIM**
**42 U.S.C. §1983**

**Plaintiff v. Corporal Jordan**

140.    Plaintiff incorporates all prior Paragraphs herein as though fully set forth at length.

141.    Prior to March 8, 2010, Corporal Jordan implemented policies, regulations and customs mandating that troopers under his command, including those named in this lawsuit, to use excessive force in arresting and detaining Mr. Leone.

142.    Alternatively, Corporal Jordan failure to act in response to other egregious acts of excessive force by troopers under his command demonstrates a deliberate indifference to Mr. Leone's right to be free from unreasonable seizures of his person.

143.    Corporal Jordan permitted, approved, endorsed, tolerated and/or acquiesced to the violations of Mr. Leone's constitutional rights by the Individual Defendants.

144.    Corporal Jordan failed to prevent the violation of Mr. Leone's constitutional rights.

145.    Corporal Jordan failed to punish or discipline any of the Individual Defendants who violated Mr. Leone's constitutional rights.

146.     Corporal Jordan failed to exercise his duty to investigate and discipline the troopers under his control.

147.     By ultimately ratifying the conduct of the Individual Defendants as described herein, Corporal Jordan is joint and severally liable as a co-conspirator for the damages suffered by Mr. Leone by virtue of the violation of his constitutional rights.

148.     Coupled with Corporal Jordan's failure to act in response to other egregious acts of excessive force by troopers demonstrates a deliberate indifference to Mr. Leone's constitutional right to be free from unreasonable seizures of the person.

149.     As a direct and proximate result of Corporal Jordan's action and/or inaction, Mr. Leone suffered extensive physical and psychological injuries as well as continued pain and suffering.

WHEREFORE, Mr. Leone demands judgment against Corporal Jordan for compensatory damages, punitive damages, attorney fees, interest, and costs of suit, and such other relief as this Honorable Court deems fitting and proper.

## COUNT IV
## UNREASONABLE SEARCH AND SEIZURE CLAIM
### 42 USC §1983

### Plaintiff v. Towanda Borough

150.     Plaintiff incorporates all prior Paragraphs herein as though fully set forth at length.

151.     Prior to March 8, 2010, Towanda Borough implemented policies, regulations and customers mandating its officers, including those named in this lawsuit, to use excessive force in arresting and detaining Mr. Leone.

152.     Alternatively, Towanda Borough's failure to act in response to other egregious acts of excessive force by Towanda Borough police officers demonstrates a deliberate indifference to Plaintiff's constitutional right to be free from unreasonable seizures of the person.

153.     In so doing, Towanda Borough, acting under color of state law, violated Mr. Leone's Fourth and Fourteenth Amendment rights to be free from unreasonable seizures of his person.

154.     As a direct and proximate result of Towanda Borough's actions and/or inactions, Mr. Leone suffered extensive physical and psychological injuries as well as continued pain and suffering.

WHEREFORE, Mr. Leone demands judgment against Towanda Borough for compensatory damages, attorney fees, interest and costs of suit, and such other relief as this Honorable Court deems fitting and proper.

## COUNT V

### DUE PROCESS RIGHTS AS A PRETRIAL DETAINEE
### 42 U.S.C. §1983

### Plaintiff v. The Individual Defendants, Corporal Jordan, and Commanding Officer

155.     Plaintiff incorporates all prior Paragraphs herein as though fully set forth at length.

156.  The Fourteenth Amendment to the United States Constitution assures Mr. Leone due process of the law.

157.  At some point while in the custody of the Individual Defendants, Mr. Leone became a pretrial detainee.  As a pretrial detainee, Mr. Leone had a corresponding due process right to be free from the use of excessive for and from punishment prior to an adjudication in accordance with due process of law.

158.  The level of force that the Individual Defendants used in arresting Mr. Leone and at all times thereafter can be classified only as punitive and served no legitimate purpose in connection with pretrial detention.  It was objectively unreasonable for the Individual Defendants to use force in the manner outlined above.

159.  Given the fact that Mr. Leone immediately surrendered upon being stopped, the extreme level of force employed by the Individual Defendants was punitive and unreasonable, *per se*.  In so doing, the Individual Defendants, Corporal Jordan, and Commanding Officer, acting under color of state law and in conspiracy with each other, violated Mr. Leone's Fourteenth Amendment right to due process.

160.  As a direct and proximate result of the actions or inactions of the Individual Defendants, Corporal Jordan, and Commanding Officer, Mr. Leone suffered extensive physical and psychological injuries as well as continued pain and suffering.

WHEREFORE, Mr. Leone demands judgment against the Individual Defendants, Corporal Jordan, and Commanding Officer, jointly and severally, for compensatory damages, punitive damages, attorney fees, interest, and costs of suit, and such other relief as this Honorable Court deems fitting and proper.

# COUNT VI

## DUE PROCESS RIGHTS AS A PRETRIAL DETAINEE
## 42 U.S.C. § 1983

### Plaintiff v. The Commanding Officer

161.    Plaintiff incorporates all prior Paragraphs herein as though fully set forth at length.

162.    The Commanding Officer witnessed the infliction of excessive force and punishment on Mr. Leone while he was in custody at Towanda Station. Additionally, the Commanding Officer observed physical injuries on Mr. Leone that were indicative of excessive force and the infliction of punishment.

163.    The Commanding Officer failed to prevent or stop the infliction of punishment upon Mr. Leone despite reasonable opportunities to do so.

164.    Prior to March 8, 2010, the Commanding Officer implemented policies, customs and regulations mandating the Individual Defendants to use excessive force on individuals in custody, including pretrial detainees.

165.    Alternatively, the Commanding Officer was aware of instances where troopers were using unnecessary and unreasonable levels of force with individuals in custody, and failed to act or implement policies to prevent the use of excessive force against Mr. Leone and those similarly situated to Mr. Leone.

166.    Knowing of other egregious acts of excessive force by troopers, the Commanding Officer's failure to act demonstrates a deliberate indifference to Plaintiff's constitutional right to due process as a pretrial detainee.

167.    In so doing, the Commanding Officer, acting under the color of state law, violated Mr. Leone's Fourth and Fourteenth Amendment rights to be free from unreasonable seizures of his person.

168.    As a direct and proximate result of the Commanding Officer's actions and/or inaction, Mr. Leone suffered extensive physical and psychological injuries as well as continued pain and suffering.

WHEREFORE, Mr. Leone demands judgment against the Commanding Officer for compensatory damages, punitive damages, attorney fee, interest, and costs of suit, and such other relief as this Honorable Court deems fitting and proper.

## COUNT VII

### DUE PROCESS RIGHTS AS A PRETRIAL DETAINEE
### 42 U.S.C. § 1983

### Plaintiff v. The Commanding Officer

169.    Plaintiff incorporates all prior Paragraphs herein as though fully set forth at length.

170.    Corporal Jordan witnessed evidence of the infliction of excessive force and punishment on Mr. Leone while he was in custody.

171.    Prior to March 8, 2010, Corporal Jordan implemented policies, customs and regulations mandating the Individual Defendants to use excessive force on individuals in custody, including pretrial detainees.

172.    Alternatively, Corporal Jordan was aware of instances where troopers were using unnecessary and unreasonable levels of force with individuals in custody, and failed to act or

implement policies to prevent the use of excessive force against Mr. Leone and those similarly situated to Mr. Leone.

173.    Knowing of other egregious acts of excessive force by troopers Corporal Jordan's failure to act demonstrates a deliberate indifference to Plaintiff's constitutional right to due process as a pretrial detainee.

174.    In so doing, Corporal Jordan, acting under the color of state law, violated Mr. Leone's Fourth and Fourteenth Amendment rights to be free from unreasonable seizures of his person.

175.    As a direct and proximate result of Corporal Jordan's actions and/or inaction, Mr. Leone suffered extensive physical and psychological injuries as well as continued pain and suffering.

WHEREFORE, Mr. Leone demands judgment against Corporal Jordan for compensatory damages, punitive damages, attorney fee, interest, and costs of suit, and such other relief as this Honorable Court deems fitting and proper.


### COUNT VIII

### DUE PROCESS RIGHTS AS A PRETRIAL DETAINEE
### 42 U.S.C. § 1983

#### Plaintiff v. Borough of Towanda

176.    Plaintiff incorporates all prior Paragraphs herein as though fully set forth at length.

177.    Prior to March 8, 2010, the Borough of Towanda developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons,

including pretrial detainees, in Pennsylvania, which caused or contributed to the violation of Mr. Leone's rights.

178.  The Borough of Towanda was aware of instances where Towanda police officers were using unnecessary and unreasonable levels of force with suspects, arrestees and pretrial detainees.  Despite possessing this information, the Borough of Towanda failed to act or implement policies to prevent the use of excessive force against Mr. Leone and those similarly situated.

179.  It was the policy and/or custom of the Borough of Towanda to inadequately supervise and train its police officers, including the officers individually named herein, thereby failing to adequately discourage further constitutional violations on the part of Towanda Borough police officers.  The Borough of Towanda did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

180.  As a result of the above described policies and customs, Towanda Borough police officers, including those troopers named in this lawsuit, believed that their own actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

181.  The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of the Borough of Towanda to the constitutional rights of persons within the Borough of Towanda, and caused and/or contributed to the violations of Mr. Leone's rights alleged herein.

182.  As a direct and proximate result of the Borough of Towanda's actions and/or inactions, Mr. Leone suffered extensive physical and psychological injuries as well as continued pain and suffering.

31

WHEREFORE, Mr. Leone demands judgment against Towanda Borough for compensatory damages, attorney fees, interest, and costs of suit, and such other relief as this Honorable Court deems fitting and proper.

## COUNT IX

## ASSAULT

**Plaintiff v. Individual Defendants, Corporal Jordan, and Commanding Officer**

183.    Plaintiff incorporates all prior Paragraphs herein as though fully set forth at length.

184.    The Individual Defendants' actions demonstrate their intent to place Mr. Leone in apprehension of imminent harmful or offensive bodily contact.

185.    Because Mr. Leone immediately surrendered and posed no threat of harm to the officers or the public, the Individual Defendants' use of force and threats was so excessive that it negated any privilege which they may have had to commit an assault in the course of their duties.

186.    Plaintiff was in actual apprehension of imminent harmful or offensive bodily contact.

187.    The Individual Defendants assaulted Mr. Leone.

188.    As a direct and proximate result of the Individual Defendants' actions, Mr. Leone suffered emotional distress and injuries.

189.    The Individual Defendants' conduct demonstrates malice, recklessness, willfulness, and/or intent to act in an oppressive manner.

190.    The Individual Defendants, Corporal Jordan, and Commanding Officer are joint and severally liable as co-conspirators and also due to the indivisible nature of injuries they inflicted upon Mr. Leone through concerted action.

WHEREFORE, Mr. Leone demands judgment against the Individual Defendants, Corporal Jordan, and Commanding Officer, jointly and severally, for compensatory damages in excess of $75,000, punitive damages, attorney fees, interest, and costs of suit, and such other relief as this Honorable Court deems fitting and proper.

## COUNT X

## BATTERY

**Plaintiff v. Individual Defendants, Corporal Jordan, and Commanding Officer**

191.    Plaintiff incorporates all prior Paragraphs herein as though fully set forth at length.

192.    The Individual Defendants' actions demonstrate an intent to cause harmful or offensive bodily contact to Plaintiff.

193.    Under the circumstances of Mr. Leone's surrender, the Individual Defendants' use of force is considered so excessive that it negated any privilege they may have had to cause harmful or offensive bodily contact in the course of Mr. Leone's arrest and detention.

194.    The Individual Defendants' actions amount to harmful or offensive bodily contact.

195.    As a direct proximate and foreseeable result of the Individual Defendants' actions, Plaintiff has suffered extensive physical injuries and continued pain and suffering.

196.    The Individual Defendants' conduct demonstrates malice, recklessness, willfulness, and/or intent to act in an oppressive manner.

197.    The Individual Defendants, Corporal Jordan, and Commanding Officer are joint and severally liable as co-conspirators and also due to the indivisible nature of injuries they inflicted upon Mr. Leone through concerted action.

WHEREFORE, Mr. Leone demands judgment against the Individual Defendants, Corporal Jordan, and Commanding Officer, jointly and severally, for compensatory damages in excess of $75,000, punitive damages, attorney fees, interest, and costs of suit, and such other relief as this Honorable Court deems fitting and proper.

## COUNT XI

## CONCERTED TORTIOUS CONDUCT

### Plaintiff v. The Commanding Officer

198.    Plaintiff incorporates all prior Paragraphs herein as though fully set forth at length.

199.    The Commanding Officer acted in concert with the Individual Defendants pursuant to a common plan or design to assault, abuse and batter Mr. Leone.

200.    The Commanding Officer knew that the conduct of the Individual Defendants with respect to Mr. Leone constituted number breaches of duty, but nevertheless gave substantial assistance and encouragement to the Individual Defendants.

201.    In providing substantial assistance to the Individual Defendants in their assault and battery of Mr. Leone, the Commanding Officer's conduct, on its own, constituted a breach of duty owed to Mr. Leone.

202.    The encouragement and assistance provided by the Commanding Officer was a direct and proximate cause of the injuries suffered by Mr. Leone.

203.    As a direct and proximate result of the Commanding Officer's actions, Mr. Leone suffered extensive physical and psychological injuries as well as continued pain and suffering.

204.    The Commanding Officer's conduct demonstrates malice, recklessness, willfulness, and/or intent to act in an oppressive and tortious manner.

205. The Commanding Officer is joint and severally liable with the Individual Defendants as a co-conspirator and also due to the indivisible injuries inflicted upon Mr. Leone through concerted action.

WHEREFORE, Mr. Leone demands judgment against the Commanding Officer, jointly and severally, for compensatory damages in excess of $75,000, punitive damages, attorney fees, interest, and costs of suit and such other relief as this Honorable Court deems fitting and proper.

## COUNT XII

## CONCERTED TORTIOUS CONDUCT

### Plaintiff v. Corporal Jordan

206. Plaintiff incorporates all prior Paragraphs herein as though fully set forth at length.

207. Corporal Jordan acted in concert with the Individual Defendants pursuant to a common plan or design to assault, abuse and batter Mr. Leone.

208. Corporal Jordan knew that the conduct of the Individual Defendants with respect to Mr. Leone constituted number breaches of duty, but nevertheless gave substantial assistance and encouragement to the Individual Defendants.

209. In providing substantial assistance to the Individual Defendants in their assault and battery of Mr. Leone, Corporal Jordan's conduct, on its own, constituted a breach of duty owed to Mr. Leone.

210. The encouragement and assistance provided by Corporal Jordan was a direct and proximate cause of the injuries suffered by Mr. Leone.

211. As a direct and proximate result of Corporal Jordan's actions, Mr. Leone suffered extensive physical and psychological injuries as well as continued pain and suffering.

212. Corporal Jordan's conduct demonstrates malice, recklessness, willfulness, and/or intent to act in an oppressive and tortious manner.

213. Corporal Jordan is joint and severally liable with the Individual Defendants as a co-conspirator and also due to the indivisible injuries inflicted upon Mr. Leone through concerted action.

WHEREFORE, Mr. Leone demands judgment against Corporal Jordan, jointly and severally, for compensatory damages in excess of $75,000, punitive damages, attorney fees, interest, and costs of suit and such other relief as this Honorable Court deems fitting and proper.

**A JURY TRIAL IS DEMANDED.**

STRASSBURGER McKENNA GUTNICK & GEFSKY

By:     /s/ Matthew C. Collins
         Matthew C. Collins
         Pa. I.D. 84776
         Four Gateway Center
         444 Liberty Avenue, Suite 2200
         Pittsburgh, PA  15222
         (412) 281-5423 (Office)
         (412) 281-8264 (Facsimile)
         *Counsel for Plaintiff*