**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT LEONE,

    Plaintiff,

v.

TOWANDA BOROUGH, et al.,

    Defendants.

CIVIL ACTION NO. 3:12-0429

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before the Court is the Motion to Dismiss Plaintiff's Complaint (Doc. 15) filed by Commonwealth Defendants.[1] Robert Leone alleges he was severely battered and assaulted when he was arrested and subsequently detained on the evening of March 8, 2010 and the morning of March 9, 2010 by various Pennsylvania State Police employees and Towanda Borough Patrolmen. Commonwealth Defendants have moved to dismiss Mr. Leone's due process claims (Counts V-VII) and his state law claims for assault, battery, and concerted tortious conduct (Counts IX-XII). Commonwealth Defendants argue that Mr. Leone's due process claims must be dismissed because they duplicate his Fourth Amendment claims. Moreover, Commonwealth Defendants assert that they are entitled to sovereign immunity for the state law tort claims. Because Mr. Leone sufficiently alleges that his seizure ended and pre-trial detention began while in the custody of the Pennsylvania State Police on March 9, 2010, Commonwealth Defendants' motion to dismiss the Fourteenth Amendment claims will be denied. And, because Mr. Leone adequately alleges that Commonwealth Defendants attacked him without intending to perform the business of their employer, Commonwealth Defendants' motion to dismiss the state law claims based on sovereign immunity will also be denied.

---

    [1]     "Commonwealth Defendants" refer to the eight Pennsylvania State Police employees and two unknown Troopers that have filed the instant motion to dismiss.

## I. Background

The facts as alleged in Plaintiff's Complaint are as follows:

On March 8, 2010, Mr. Leone decided to go for a scenic drive through the mountains of northeastern Pennsylvania. (*Compl.*, ¶ 23.) Unbeknownst to Mr. Leone, his vehicle matched the description of a vehicle involved in a minor traffic accident. (*Id*. at ¶ 25.) As he had no reason to believe his vehicle was suspected of being involved in a traffic accident, Mr. Leone failed to stop his vehicle even after a Pennsylvania State Police car pulled behind him with its lights and sirens activated. (*Id*. at ¶ 25.) Shortly thereafter, two additional Pennsylvania State Police cars joined the low speed pursuit. (*Id*. at ¶ 27.) At the same time, Corporal Stipcak and Trooper Knock placed stop sticks in the road to disable Mr. Leone's vehicle. (*Id*. at ¶ 28.) After Mr. Leone ran over the stop sticks, Corporal Stipcak joined the low speed pursuit. (*Id*. at ¶¶ 29-30.) Ultimately, at approximately 9:00 p.m., Colonel Stipcak intentionally rammed Mr. Leone's vehicle off the road, which resulted in the two vehicles being wedged together preventing Mr. Leone from exiting his vehicle through the driver's side door. (*Id*. at ¶¶ 31-34.)

Mr. Leone's stopped vehicle was quickly surrounded by the Troopers. (*Id*. at ¶ 36.) Corporal Stipcak then climbed the hood of Mr. Leone's vehicle and began shouting at Mr. Leone to exit the vehicle. (*Id*. at ¶ 37.) Corporal Stipcak, however, did not direct Mr. Leone how to exit the vehicle. (*Id*. at ¶ 38.) Although Mr. Leone remained calmly seated with his hands in clear view of the Troopers, Colonel Stipcak shot him multiple times with a Taser device through the vehicle's open T-top. (*Id*. at ¶¶ 39-40.) Mr. Leone was then forcibly removed from the vehicle. (*Id*. at ¶ 41.) Once outside of the vehicle, Mr. Leone was repeatedly struck in the head, and he was kicked and punched even though he was face down on the ground. (*Id*. at ¶¶ 42-43.) Colonel Stipcak also jumped from the hood of Mr. Leone's vehicle directly onto his back, driving his boots into Mr. Leone's body. (*Id*. at ¶ 44.) Mr. Leone's beating was so brutal that Trooper Renfer fractured his own hand when punching Mr. Leone in the face. (*Id*. at ¶ 47.)

Mr. Leone was then escorted to the rear of the Pennsylvania State Police vehicles so the attack would not be captured on the police vehicles' dashboard cameras. (*Id*. at ¶ 50.) Once off camera, Mr. Leone was further beaten, abused, hog-tied, and placed in the rear of a Pennsylvania State Police vehicle. (*Id*. at ¶ 53.)

A short time later, an ambulance arrived at the scene of the accident to treat Trooper Renfer's fractured hand. (*Id*. at ¶ 57.) The paramedics, however, were not permitted to treat Mr. Leone. (*Id*. at ¶ 58.) Instead, he was driven to Memorial Hospital in a Pennsylvania State Police vehicle. (*Id*. at ¶ 59.) Mr. Leone arrived at the hospital at approximately 10:20 p.m. (*Id*. at ¶ 61.) While Mr. Leone was at the hospital, Defendants continued to use the Taser on him and beat him while he was lying on a hospital bed. (*Id*. at ¶¶ 64-66.)

At approximately 12:45 a.m., Mr. Leone was released from the hospital and he was transferred to the Pennsylvania State Police facility in Towanda, Pennsylvania ("Towanda Station"). (*Id*. at ¶ 69.) While at Towanda Station, the Commanding Officer observed one or more individuals use unlawful force against Mr. Leone, as he was further beaten and abused. (*Id*. at ¶¶ 70-72.) In addition, another Trooper threatened to kill or permanently injure Mr. Leone. (*Id*. at ¶ 73.)

Thereafter, Corporal Stipcak and other Troopers arranged for Mr. Leone to be arraigned via videoconference in order to conceal his extensive injuries. (*Id*. at ¶ 74.) For some unknown reason, however, the videoconference equipment experienced a technical failure. (*Id*.) After this technical failure, Mr. Leone was again shot with Tasers and beaten. (*Id*. at ¶ 75.)

Due to the technical problems with the videoconference equipment, Commonwealth Defendants decided to transport Mr. Leone to the Bradford County Correctional Facility where he could be arraigned via videoconference. (*Id*. at ¶ 76.)

As Mr. Leone was escorted out of the Towanda Station, he attempted to flee from custody. (*Id*. at ¶ 77.) However, as Mr. Leone's legs were shackled, his attempted escape was quickly thwarted by Trooper Burian, who tackled Mr. Leone and sprayed him in the face, eyes, and mouth with pepper spray. (*Id*. at ¶¶ 78-79.)  And, while he was on the

ground, Mr. Leone was hit multiple times with a collapsible metal baton. (*Id*. at ¶ 80.)

At approximately 5:30 a.m., Mr. Leone was taken to Memorial Hospital for the second time in a span of seven hours. (*Id*. at ¶¶ 84-85.)  Mr. Leone had a laceration on his right eyelid and multiple bruises on his back and the rear of his extremities. (*Id*. at ¶ 87.)  Mr. Leone also possessed signs indicative of a closed head injury. (*Id*.at ¶ 88.)  Although hospital personnel noted that Mr. Leone was shaking and disoriented, Corporal Stipcak, Trooper Burian, and others removed him from the hospital at 6:15 a.m. (*Id*. at ¶¶ 90-91.)  Mr. Leone was then transported to the Bradford County Correctional Facility. (*Id*. at ¶ 95.)

On March 7, 2012, Mr. Leone commenced this action against Commonwealth Defendants, Towanda Borough, and two Towanda Borough Patrolman, John Werner and David Lantz. (*Id*. at ¶¶ 7-19.) Commonwealth Defendants filed the instant motion to dismiss on May 23, 2012.  The motion to dismiss has now been fully briefed and is ripe for disposition.

## II. Discussion

### A.   Legal Standard for a 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id*.  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127

S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1949**.**

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were

not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.    Commonwealth Defendants' Motion to Dismiss**

Commonwealth Defendants argue that Mr. Leone's due process claims (Counts V-VII) should be dismissed because he only alleges facts that took place before he became a pre-trial detainee.  Furthermore, Commonwealth Defendants seek dismissal of the state law claims (Counts IX-XII) because the alleged acts of Commonwealth Defendants all took place within the scope of their employment.  These arguments will be addressed in turn.

**1.    Due Process Claims**

Mr. Leone asserts his Fourteenth Amendment Due Process claims against Commonwealth Defendants pursuant to 42 U.S.C. § 1983.  The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  The Due Process Clause of the Fourteenth Amendment contains both procedural and substantive due process protections. *See Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (citing *Planned Parenthood of S.E. Pennsylvania v. Casey*, 505 U.S. 833, 846-47, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992)).

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen ... or any other person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).  "To establish liability under 42 U.S.C. § 1983, a plaintiff

must show that the defendants, (1) acting under color of law, (2) violated the plaintiff's federal constitutional or statutory rights, (3) and thereby caused the complained of injury." *Elmore v. Cleary*, 299 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

It is well-settled that "where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). In applying this principle, Commonwealth Defendants argue that Mr. Leone was not a pre-trial detainee, and, therefore, his due process claims duplicate his Fourth Amendment claims and should be dismissed.

Based on the facts as set forth in the Complaint, Commonwealth Defendants' motion to dismiss the due process claims will be denied. The Fourth Amendment protects individuals from the use of excessive force by government officials from the point of seizure until the individual seized becomes a pre-trial detainee. *See Bodnar v. Wagner*, No. 07-2038, 2010 WL 56067, at *6 (M.D. Pa. Jan. 5, 2010) (citing *Graham*, 490 U.S. at 388; *Donahue v. Gavin*, 380 F.3d 371, 382 (3d Cir. 2002)). Once the individual becomes a pre-trial detainee, "the Due Process Clause of the Fourteenth Amendment provides continuing protection." *Id*. (citing *James v. York Cnty. Police Dep't*, 160 F. App'x 126, 131 (3d Cir. 2005)).

"Where the seizure ends and pre-trial detention begins is a difficult question." *United States v. Johnson*, 107 F. 3d 200, 207 (3d Cir. 1997)). But, it is clear that the Fourth Amendment "applies to government conduct during the course of an arrest, and it continues during transportation of an arrestee to the police station." *Bodnar*, 2010 WL 56067, at *6 (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633-34 (3d Cir. 1995)). After the arrestee arrives at the station house, however, courts consider factors such as "the length of time in custody, whether the arrestee has been transferred out of custody of the arresting

officers, and whether the arrestee has been arraigned," to determine whether the arrestee has become a pre-trial detainee. *Id*. (citing *Dull v. W. Manchester Twp. Police Dep't.*, No. 07-307, 2008 WL 717836, at *9 (M.D. Pa. Mar. 17, 2008)).

In *Bodnar*, this Court granted the defendants' motion for summary judgment on the plaintiffs' Fourteenth Amendment claim because the claim merely duplicated the plaintiffs' Fourth Amendment claims. *See id*. at *7. Although the plaintiff in *Bodnar* was detained for nine hours in a holding cell without medical treatment, I granted summary judgment to the defendants on the Fourteenth Amendment claim because "the injuries for which medical care was needed were allegedly caused during the arrest, the same two officers continued to control the plaintiff, and he was arrested without a warrant and had not yet been arraigned before a judicial officer." *Id*.

Conversely, in *Dull*, Judge Conner denied the defendants' motion to dismiss a Fourteenth Amendment claim as a duplicate of the plaintiff's Fourth Amendment claim because "with respect to [the plaintiff's] detainment at the police station, the record contains no information regarding its duration, whether the arresting officers retained custody, or whether she was arraigned." *Dull*, 2008 WL 717836, at *10. Thus, the plaintiff was permitted to proceed on the Fourteenth Amendment claim. *See id*.

Here, Mr. Leone will be permitted to further develop the factual circumstances of his Fourteenth Amendment claims against Commonwealth Defendants. At this early stage of the litigation, and based on the facts as alleged in the Complaint, Mr. Leone has pled sufficient facts "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element of his due process claims. *Phillips v*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). While it is true that Mr. Leone does not allege that he was arrested pursuant to a warrant or that he was formally arraigned, and he alleges that some of the arresting officers retained custody over him, (*Compl.*, ¶¶ 59, 69, 74-76), Mr. Leone also alleges other facts that could support a finding that he was a pre-trial detainee. For example, Mr. Leone alleges that he was in Pennsylvania State Police custody from approximately 9:00 p.m. until at least 6:15 a.m. (*Id*. at ¶¶ 31, 91.) Moreover, Mr. Leone

alleges that Commonwealth Defendants attempted to arraign him via videoconference, but the arraignment was only stopped due to a technical failure. (*Id*. at ¶¶ 74-75.) Furthermore, Mr. Leone asserts that his injuries were caused, at least in part, by the vicious beatings he received while he was at the hospital and Towanda Station, which were not during the course of his arrest. (*Id*. at ¶¶ 64-66, 70-72, 77-80.) And, unlike *Bodnar* where the plaintiff was detained in the same holding cell for nine hours, the fact that Mr. Leone was escorted by the police from Towanda Station to Memorial Hospital may indicate that Mr. Leone was a pre-trial detainee. Based on these allegations, Mr. Leone has adequately alleged that his seizure ended and pre-trial detention began during the morning of March 9, 2010. Thus, Mr. Leone will be permitted to proceed with his due process claims.

### 2. State Law Claims

Commonwealth Defendants also seek dismissal of Mr. Leone's state law claims for assault, battery, and concerted tortious conduct. Commonwealth Defendants argue they are entitled to sovereign immunity pursuant to 1 Pa. Cons. Stat. Ann. § 2310. Section 2310 provides, in pertinent part, that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." *Id*.

The Pennsylvania General Assembly has provided nine specific exceptions to the general grant of immunity: (1) the operation of a motor vehicle in the control or possession of a Commonwealth party; (2) health care employees; (3) care, custody or control of personal property; (4) Commonwealth-owned property; (5) potholes or other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. *See* 42 Pa. Cons.Stat. Ann. § 8522.

Although Commonwealth Defendants are correct that assault, battery, and concerted tortious conduct are not included in the categories for which sovereign immunity has been waived, the Pennsylvania State Police employees are only entitled to immunity to the extent that they acted within the scope of their employment. *See* 1 Pa. Cons. Stat. Ann. § 2310.

In Pennsylvania, "'conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master . . . .'" *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (quoting Restatement (Second) Agency § 228).

"Under Pennsylvania law, even unauthorized actions taken by an employee can fall within the scope of his or her employment if they are 'clearly incidental' to his or her employer's objectives." *Brumfield*, 232 F.3d at 381; *see also Madison v. Weaver*, No. 11-0997, (W.D. Pa. Jan. 3, 2012), ECF No. 16 ("Commonwealth employees are immune from liability due to intentional misconduct, so long as the employee is acting within the scope of his or her employment" (citing *Faust v. Dep't of Revenue*, 592 A.2d 835, 839 (Pa. Cmwlth. 1991))). But, "'an assault committed by an employee upon another for personal reasons or in an outrageous manner [which] is not actuated by an intent to perform the business of the employer . . . is not within the scope of employment.'" *Strothers v. Nassan*, No. 08-1624, 2009 WL 976604, at *10 (W.D. Pa. Apr. 9, 2009) (quoting *R.A. v. First Church of Christ*, 748 A.2d 692, 700 (Pa.Super.Ct.2000)). And, "'the question of whether an individual has acted within the scope of his or her employment is ordinarily a question of fact for the jury to decide.'" *Id*. (citing *Orr v. William J. Burns Int'l Detective Agency*, 337 Pa. 587, 12 A.2d 25, 27 (Pa.1940)).

Here, Mr. Leone has sufficiently alleged facts to survive Commonwealth Defendants' motion to dismiss. Taking the allegations in the Complaint as true, Mr. Leone has stated numerous facts that Commonwealth Defendants actions were not 'clearly incidental' to their employment as Pennsylvania State Police employees. In particular, Mr. Leone alleges Commonwealth Defendants shot their Taser guns at him while he was on a hospital bed at Memorial Hospital, that he was assaulted at Towanda Station after the videoconference equipment mysteriously failed, and that he was beaten with a metal baton while he was handcuffed and shackled. (*Compl.*, ¶¶ 65, 75, 80.) As these allegations are all indicative of a personal motivation to injure Mr. Leone, and not of a desire to perform the business of

their employer, Commonwealth Defendants are not entitled to sovereign immunity based on the pleadings.[2] Thus, Mr. Leone will be permitted to proceed on his state law claims against Commonwealth Defendants.

### III. Conclusion

For the above stated reasons, Commonwealth Defendants' motion to dismiss will be denied.

An appropriate order follows.


July 3, 2012                                       /s/ A. Richard Caputo
Date                                               A. Richard Caputo
                                                   United States District Judge

---

[2]  However, if discovery reveals that Commonwealth Defendants acted pursuant to their employment responsibilities, they remain free to assert sovereign immunity at a later stage in this litigation. *See, e.g., Strothers*, 2009 WL 976604, at *10.