**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT LEONE, | |
| Plaintiff, | CIVIL ACTION NO. 3:CV-12-429 |
| v. | (JUDGE CAPUTO) |
| CORPORAL ROGER STIPCAK, TROOPER SCOTT RENFER, TROOPER ANDREW BURIAN, TROOPER MATTHEW KNOCK, and TROOPER THAD WARNICK, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is Defendants Corporal Roger Stipcak ("Stipcak"), Trooper Scott Renfer ("Renfer"), Trooper Andrew Burian ("Burian"), Trooper Matthew Knock ("Knock"), and Trooper Thad Warnick's ("Warnick") (collectively, "Defendants") Motion for Summary Judgment. (Doc. 46.) Plaintiff Robert Leone ("Leone") contends that Defendants violated his Fourth Amendment rights and committed state law torts during a series of events relating to the use of force that began on the evening of March 8, 2010 and continued into the following morning. Because there are disputed material issues of fact regarding whether the use of force against Leone was objectively reasonable, Defendants' motion for summary judgment on the Fourth Amendment claim will be denied. Furthermore, because factual issues exist as to whether Defendants' actions were actuated by an intent to serve their employer and/or whether the use of force was expected by their employer during the events relevant to this litigation, Defendants' motion for summary judgment on the state law claims will also be denied.

**I. Background**

**A.     Factual Background**

On March 8, 2010, Leone took the T-tops off his Trans Am and decided to go for a drive. (Doc. 47, *Defendants' Statement of Material Facts*, "*Defs.' SMF*", ¶ 4; Doc. 54, *Plaintiff's Statement of Material Facts*, "*Plf.'s SMF*," ¶ 4.)  Leone suffered from a mental illness prior to that day, and he continues to suffer from the symptoms of mental illness. (*Defs.' SMF*, ¶ 7; *Plf.'s SMF*, ¶ 7.)  On his drive, Leone made stops at an observatory and a store.  After stopping at the store, Leone proceeded to drive through Pennsylvania for approximately two and a half or three hours. (*Defs.' SMF*, ¶¶ 5-6, 11; *Plf.'s SMF*, ¶¶ 5-6, 11.)

At some point thereafter, Kelly Murray ("Murray") was stopped at a stoplight when she contends that Leone's vehicle side-swiped her automobile. (*Defs.' SMF*, ¶¶ 12-13; *Plf.'s SMF*, ¶¶ 12-13.)  Leone disputes that he side-swiped Murray's automobile. (*Id*.)  Although Leone gave a statement to his insurer that he struck Murray's automobile, he contends that he was pressured to admit to it so that the insurer would pay the claim. (*Leone Dep.*, 221:2-14.)  Leone, however, was ultimately convicted of one count of accident involving damage to attended vehicle in the Court of Common Pleas of Bradford County. (*Defs.' SMF*, ¶ 19; *Plf.'s SMF*, ¶ 19.)

Murray proceeded to follow Leone's vehicle, and she also contacted the State Police. (*Defs.' SMF*, ¶ 13; *Plf.'s SMF*, ¶ 13.)  Renfer, Warnick, and Burian were notified of the hit-and-run, and they got in their vehicles and proceeded to Leone's location along Route 6. (*Defs.' SMF*, ¶¶ 14-16, 21-23; *Plf.'s SMF*, ¶¶ 14-16; 21-23.)  The troopers pulled behind Leone's vehicle with their lights and sirens activated. (*Defs.' SMF*, ¶ 24; *Plf.'s SMF*, ¶ 24.) Leone noticed the flashing lights of the police vehicles behind him, but he was scared because he had just gotten his license back, was on probation for a DWI, and restrictions

2

on his license provided that he was not to drive outside of Broome County, New York. (*Defs.' SMF*, ¶ 28; *Plf.'s SMF*, ¶ 28.)

Leone did not stop for the police, and he instead continued driving for approximately thirty minutes at speeds between twenty and fifty miles per hours. (*Defs.' SMF*, ¶¶ 31-32; *Plf.'s SMF*, ¶¶ 31-32.) The troopers in pursuit unsuccessfully attempted to pull in front of Leone's vehicle and conduct a rolling roadblock. (*Defs.' SMF*, ¶¶ 38-40; *Plf.'s SMF*, ¶¶ 38-40.)

Stipcak was the patrol supervisor on March 8, 2010. He, along with Knock, deployed tire deflating spike strips along Route 6 in an attempt to stop Leone's vehicle. (*Defs.' SMF*, ¶¶ 36-37, 44; *Plf.'s SMF*, ¶¶ 36-37, 44.) After the spike strips failed to stop Leone's vehicle, Stipcak joined the pursuit in his vehicle, while Knock got into Towanda Borough Police Officer Lantz's vehicle. (*Defs.' SMF*, ¶¶ 45-48; *Plf.'s SMF*, ¶¶ 48.) The pursuit was captured on the Mobile Video Recordings ("MVR") for Cars # 5, 6, 8, and 18. (*Defs.' SMF*, Exs. E, H, I, M.)

Thereafter, Stipcak decided to take Leone off the road, and he caused Leone's vehicle to spin out and come to a stop along the southern edge of the roadway. (*Defs.' SMF*, ¶¶ 49-53; *Plf.'s SMF*, ¶¶ 49-53.) Leone felt the vehicle spin wildly, and he was jerked around and slammed against the inside of the door. (*Defs.' SMF*, ¶ 54; *Plf.'s SMF*, ¶ 54.)

Renfer pulled his vehicle in front of Leone's, exited, and drew his sidearm. (*Defs.' SMF*, ¶ 55; *Plf.'s SMF*, ¶ 55.) Stipcak's vehicle stopped in a position that prevented both Leone and himself from opening their doors. (*Defs.' SMF*, ¶ 57; *Plf.'s SMF*, ¶ 57.) Warnick stopped his vehicle approximately fifteen to twenty feet away from Leone's vehicle. (*Defs.' SMF*, ¶ 58; *Plf.'s SMF*, ¶ 58.) Burian pulled his vehicle around Stipcak's vehicle and parked. (*Defs.' SMF*, ¶ 59; *Plf.'s SMF*, ¶ 59.) Burian exited his vehicle with a loaded shotgun and pointed it at Leone as a cover officer. (*Defs.' SMF*, ¶ 60; *Plf.'s SMF*, ¶ 60.)

Stipcak and Leone were eye to eye through the windshields of their vehicles, and Stipcak exited his vehicle through the window and climbed onto the hood of the Trans Am. (*Defs.' SMF*, ¶¶ 61-62; *Plf.'s SMF*, ¶¶ 61-62.) From there, Stipcak was able to see Leone clearly because the T-tops were off the Trans Am. (*Defs.' SMF*, ¶ 64; *Plf.'s SMF*, ¶ 64.) The troopers began giving Leone commands to put his hands up and exit the vehicle. (*Defs.' SMF*, ¶ 65; *Plf.'s SMF*, ¶ 65.)

The parties largely dispute the circumstances as to how the following events unfolded. According to Defendants, Leone did not respond to commands, sat in his vehicle smoking a cigarette, made no attempt to reach for his door handle or open his car door, did not put his hands in the air, did not attempt to climb out through the opened roof, and did not acknowledge Stipcak's presence. (*Defs.' SMF*, ¶¶ 66-72.) Leone, conversely, contends that the scene was noisy, he was unable to exit his vehicle, the instructions came very quickly, he was not instructed to get out of the car through the roof, and he did not know how he could surrender at that time. (*Plf.'s SMF*, ¶¶ 66-72.)

At that point, Stipcak deployed his taser for five seconds, (*Defs.' SMF*, ¶ 75; *Plf.'s SMF*, ¶ 75), striking Leone in the chest. (*Leone Dep.*, 93:1-16.) While Stipcak and Burian testified that the taser made a good connection, Leone contends that the taser failed to effectively connect. (*Defs.' SMF*, ¶ 74; *Plf.'s SMF*, ¶ 74.)

After he was tased, Defendants contend that Leone still did not respond to commands. (*Defs.' SMF*, ¶ 77.) Leone, however, maintains that he was not given clear instructions or an adequate amount of time to respond. (*Plf.'s SMF*, ¶ 77.) Stipcak then squeezed the taser trigger again. (*Defs.' SMF*, ¶ 78; *Plf.'s SMF*, ¶ 78.)

Knock approached the door of Leone's vehicle and entered. (*Defs.' SMF*, ¶ 79; *Plf.'s SMF*, ¶ 79.) Defendants contend that Knock told Leone to exit the vehicle, but he held onto the steering wheel and was throwing his arms in the air trying to pull away. (*Defs.' SMF*, ¶¶

82-84.) According to Knock, Leone put his hands in the air, swinging at him. (*Defs.' SMF*, ¶ 86.) Leone, conversely, disputes that he swung at Knock or that Knock provided verbal instructions. Rather, Knock was attempting to unbuckle Leone's seatbelt and began punching him. (*Plf.'s SMF*, ¶¶ 82-84, 86.) Knock contends that he punched Leone with a closed fist strike to the face at that time, while Leone testified that he was punched multiple times by Knock. (*Defs.' SMF*, ¶ 88; *Plf.'s SMF*, ¶ 88.) Renfer also punched Leone multiple times in the face. (*Defs. SMF*, ¶ 89; *Plf.'s SMF*, ¶ 89.)

Leone was then pulled from the vehicle and brought to the ground head first. (*Defs.' SMF*, ¶ 90; *Plf.'s SMF*, ¶ 90.) According to Defendants, Leone was fighting with the troopers and preventing them from getting his arms behind his back, while Leone testified that he was being punched and kicked while he was on the ground. (*Defs.' SMF*, ¶¶ 92-95; *Plf.'s SMF*, ¶¶ 92-95.) Stipcak testified that he then initiated the taser again, (*Defs.' SMF*, ¶ 97), before leaping from the hood of the Trans Am. While Stipcak testified that he landed on someone's legs or feet, Leone contends that Stipcak landed on his ribs. (*Defs.' SMF*, ¶¶ 100-101; *Plf.'s SMF*, ¶¶ 100-101.)

Stipcak testified that he then squeezed the taser trigger again, and he, Burian, and Renfer got caught in the wires. (*Defs.' SMF*, ¶¶ 110-112.) Leone testified that he was tased six to eight times at the scene along Route 6, while the taser report indicates that the taser was deployed five times during the one minute and three second span between 9:03:26 and 9:04:29. (*Defs.' SMF*, ¶¶ 114-115.) Eventually, Burian was able to gain control of Leone's right arm and put a handcuff on it. (*Defs.' SMF*, ¶ 117; *Plf.'s SMF*, ¶ 117.) Leone was then walked to the patrol vehicle. Leone testified that he was placed next to the vehicle, (*Plf.'s SMF*, ¶¶ 130-131), while Defendants contend that he was placed in Car # 5 at that time. (*Def.'s SMF*, ¶ 131.)

The events occurring from the time where the troopers exited their vehicles until

Leone was walked towards Car #5 were captured by the MVR for that vehicle. (*Defs.' SMF*, Ex. I.) However, it is not clear from the MVR for Car #5 whether Leone was placed in the car at that time, as he was no longer in view of the camera. From that point in time forward, the MVR for Car #5 captures only audio of the encounter along Route 6.

Thereafter, Stipcak contends that Leone, while in the vehicle, spit on his face. (*Defs.' SMF*, ¶ 135.) Stipcak testified that he then pushed Leone on his side on the car seat, and Leone brought his feet up and began kicking him. (*Id*. at ¶ 136.) Leone testified that he did not spit on Stipcak. (*Plf.'s SMF*, ¶ 135.) While not in view of the recording, audio of the spitting dispute between Stipcak and Leone can be heard on the MVR for Car #5. (*Defs.' SMF*, Ex. I.) Leone's feet and hands were eventually tied together using tie rope restraints. (*Defs.' SMF*, ¶ 147; *Plf.'s SMF*, ¶ 147.)

Leone was then transported to Memorial Hospital. Leone's restraints were removed while he was in the treatment room. (*Defs.' SMF*, ¶ 161; *Plf.'s SMF*, ¶ 161.) Leone testified that while he was in the hospital, Stipcak punched him in the face and ribs. (*Defs.' SMF*, ¶ 164; *Plf.'s SMF*, ¶ 164.) Stipcak, conversely, testified that Leone was initially calm at the hospital, but after being some questions, he became very agitated. (*Defs.' SMF*, ¶¶ 166, 168.) According to Defendants, Leone tried to swing at Stipcak. (*Id*. at ¶ 176-179.) Burian and Sean Thibodeault, a paramedic, then entered the room. (*Id*. at ¶ 179.) Leone continued flailing, and Stipcak tased him. (*Id*. at ¶ 184.) Thibodeault testified that Leone was only tased after he became agitated. (*Thibodeault Dep.*, 35:2-7.) After Leone was tased, Leone stopped flailing and was able to be cuffed. (*Id*. at 43:18-23.) Thibodeault further testified that prior to Leone swinging at Stipcak, neither Stipcak nor Burian acted aggressively towards Leone. (*Id*. at 52:1-6.) Leone testified that he was subsequently beaten a second time at the hospital, but it was "unclear" and he was "foggy" as to who beat him on that occasion. (*Leone Dep.,* 151:2-7.)

Leone was released from the hospital and taken to the Towanda barracks for processing and arraignment. (*Defs.' SMF*, ¶ 203; *Plf.'s SMF*, ¶ 203.)  There, Leone was in handcuffs and shackled to the ground, and he was fingerprinted and photographed without incident. (*Defs.' SMF*, ¶¶ 205, 207; *Plf.'s SMF*, ¶¶ 205, 207.)  A telephone arraignment was begun with Magisterial District Judge Fred M. Wheaton, but he advised the State Police that they should make arrangements to bring Leone before him physically or to set up a video conference. (*Wheaton Decl.*, ¶ 8.)  The call ended, and he was never contacted for an in-person or video arraignment. (*Id*. at ¶¶ 9-10.)

Leone testified that while he was at the barracks, Stipcak pulled out a four-foot stick and began smacking it on his hand, telling him he was "going to fucking get it." (*Defs.' SMF*, ¶ 216; *Plf.'s SMF*, ¶ 216.)  Stipcak testified, however, that Leone started getting worked up at that time, so he pulled out his ASP baton and said "if you keep it up, you're going to go back to the hospital." (*Stipcak Dep.*, 160:13-16.)

Thereafter, Leone was escorted out of the barracks for transfer to the county prison. Leone testified that once he got outside, Burian struck him with the baton and that he was maced in the eyes. (*Leone Dep.*, 163:18-167:6.)  Leone further denied that he attempted to flee from the troopers. (*Id*.)  Defendants, however, contend that Leone attempted to run away once he was outside. (*Defs.' SMF*, ¶ 229.)  As a result, Stipcak drew his baton, striking Leone twice in the center mass. (*Stipcak Dep.*, 164:11-165:1.)  The baton strikes did not stop Leone, according to Burian, so he pulled out his pepper spray and gave Leone a short burst which was unsuccessful. (*Burian Dep.*, 99:14-17.)  Leone then knocked Burian to the ground, and as Leone turned to face him, Burian shot a burst of pepper spray in his eyes and mouth, which temporarily stopped Leone. (*Id*. at 99:17-100:6.)  While Leone was stunned from the pepper spray, Stipcak struck him twice more with the baton and he was then taken to the ground. (*Id*.)

7

John Werner, a patrolman for the Towanda Borough Police Department, was then called to assist Stipcak and Burian. (*Defs.' SMF*, ¶ 238; *Plf.'s SMF*, ¶ 238.)  Leone testified that he was "hogtied" by Stipcak in a concave shape, and that he was eventually picked up off the ground by Stipcak and thrown in the vehicle. (*Leone Dep.*, 170:2-172:10.)  Werner, however, recalled Leone being able to walk to the vehicle, and he did not recall himself or any of the troopers lifting Leone from the ground by shackles or tie restraints. (*Werner Dep.*, 16:1-2, 30:1-8.)

After Leone was in the vehicle, he was transported to Memorial Hospital for the second time. (*Defs.' SMF*, ¶ 250; *Plf.'s SMF*, ¶ 250.)  Leone does not recall being treated at the hospital the second time. (*Defs.' SMF*, ¶ 251; *Plf.'s SMF*, ¶ 251.)  He was transported back to the station at approximately 6:15 a.m. (*Defs.' SMF*, ¶ 254; *Plf.'s SMF*, ¶ 254.)  Leone was later arraigned by video at the Bradford County prison. (*Defs.' SMF*, ¶ 257; *Plf.'s SMF*, ¶ 257.)

Leone was ultimately charged with a number of offenses, and a jury found him guilty of the charges involving damage to another vehicle, fleeing or attempting to elude a police officer, resisting arrest, and simple assault. (*Leone Dep.*, Ex. 2.)

**B.    Procedural History**

In view of the foregoing events, Leone commenced this action on March 7, 2012 against Towanda Borough, two Towanda Borough Patrolmen, and a number of Pennsylvania State Police officials. (*Compl.*)  The Twelve-Count Complaint set forth claims for violations of Leone's Fourth and Fourteenth Amendment rights, as well as state law claims for assault, battery, and concerted tortious conduct. (*Id.*)  The Pennsylvania State Police officials moved to dismiss the Fourteenth Amendment and state law claims, but their motion to dismiss was denied and the action proceeded to discovery. *See Leone v. Towanda Borough*, No. 12-429, 2012 WL 2590387 (M.D. Pa. July 3, 2012).

By stipulation filed on February 14, 2014, Defendants Towanda Borough and the two Towanda Borough Patrolmen were dismissed from the action with prejudice. (Doc. 38.) And, by stipulation dated May 19, 2014, Defendants Timothy Young, Thomas Jordan, and Charles Sands were dismissed from the litigation with prejudice. (Doc. 45.) In view of these stipulations, the only non-dismissed claims are contained in Counts I, V, IX, and X of the Complaint.

The remaining Defendants, *i.e.*, Stipcak, Renfer, Burian, Knock, and Warnick, filed the instant motion for summary judgment on May 19, 2014. (Doc. 46.)  Leone filed his submissions in opposition to Defendants' motion on August 15, 2014. (Docs. 54-55.)  And, on September 12, 2014, Defendants filed their reply brief in further support of their motion. (Doc. 59.)  Defendants' motion for summary judgment is now fully briefed and ripe for disposition.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d

68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine question of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Denal Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57, 106 S. Ct. 2505. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving

party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505.

### III. Discussion

Defendants' motion for summary judgment requests the entry of judgment in their favor on all of Leone's remaining claims, *i.e.*, the Fourth Amendment claim (Count I), the Fourteenth Amendment claim (Count V), the assault claim (Count IX), and the battery claim (Count X). (Doc. 48.) In his opposition brief, Leone agrees that at all times relevant to this action he was an arrestee and not a pretrial detainee, (Doc. 55, 8), thus conceding that Defendants are entitled to summary judgment on the Fourteenth Amendment claim. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998) ("While the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees are protected by the due process clause of the Fifth or Fourteenth Amendments."); *Bodnar v. Wagner*, No. 07-2038, 2010 WL 56097, at *6 (M.D. Pa. Jan. 5, 2010) (same). Therefore, at issue is whether Defendants are entitled to summary judgment on Leone's Fourth Amendment, assault, and/or battery claims. Leone's Fourth Amendment claim will be addressed first.

### A.     Fourth Amendment Claim

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. Leone's Fourth Amendment claim is brought pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom,

or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983. "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

"A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable," *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002) (citing *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)), and "[t]he use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment," *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)). "In deciding whether challenged conduct constitutes excessive force, a court must determine the objective 'reasonableness' of the challenged conduct, considering 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Couden*, 446 F.3d at 496-97 (quoting *Carswell*, 381 F.3d at 240). "Other factors include 'the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *Couden*, 446 F.3d at 497 (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)). This standard is one of objective reasonableness, and looks to "'the reasonableness of the officer's belief as to the appropriate level of force[,]' which 'should be judged from [the officer's] on-scene perspective,' and not in the '20/20 vision of

hindsight.'" *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (alterations in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 205, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). Courts are instructed to "take into consideration the fact that 'police officers are often forced to make split-second judgments- in circumstances that are tense, uncertain, and rapidly evolving- about the amount of force that is necessary in a particular situation.'" *Couden*, 446 F.3d at 497 (quoting *Graham*, 490 U.S. at 397, 109 S. Ct. 1865).

Defendants' motion for summary judgment on the excessive force claim will be denied. First, a determination on the reasonableness of the use of force depends on "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force," and that "[t]he reasonableness of the use of force is normally an issue for the jury." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) (citing *Abraham*, 183 F.3d at 290-91). Here, the facts and circumstances regarding Defendants' use of force against Leone during his first visit to the hospital, outside the Towanda barracks, and along Route 6 are largely in dispute, and whether Defendants' use of force was reasonable will be left to the jury's determination.

Second, as noted above, the pursuit of Leone's vehicle along Route 6 was recorded by multiple MVRs, while portions of the use of force against Leone once the pursuit ended was captured by video and/or audio by the MVR for Car #5. Here, Defendants and Leone provide two different accounts as to the use of force that occurred along the side of Route 6, and Defendants contend that viewing "the facts in the light depicted by the videotape," summary judgment in their favor is warranted. *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Unlike in *Scott*, however, Leone's story is not "blatantly contradicted by the record," nor is it "so utterly discredited" by the MVR for Car #5 "that no reasonable jury could . . . believe him." *Id*. Rather, that video depicts a scene in which Leone is tased, pulled from his vehicle, and appears to be punched multiple times,

13

as well as jumped on. (*Defs.' SMF*, Ex. I.) Furthermore, the scene was extremely noisy, and little time elapsed from when officers approached Leone's car to when he was put on the ground, (*id.*), which supports his contention that he did not have an adequate opportunity to respond to any instructions given by the officers. Likewise, after Leone and Defendants are no longer visible on camera, the audio for the MVR for Car #5 appears to capture Stipcak yelling at Leone and telling him, among other things, that "you have a long fucking night ahead of you." (*Id.*) Stipcak then can be heard accusing Leone of spitting on him, which Leone denies, and Leone begins screaming. (*Id.*) Later, Stipcak tells Leone that he will have a "hell of a lot tougher night ahead" after spitting in his face. (*Id.*) In this case, the video, including the audible voices and sounds captured by the MVR for Car #5, creates a question for the jury as to whether the use of force against Leone was objectively reasonable.

Third, Defendants contend that because "[a] review of . . . credibility shows that Plaintiff's accounts of the evening are uncorroborated by anyone," (Doc. 59, 9), summary judgment is appropriate pursuant to *Brown v. Borough of Chambersburg*, 903 F.3d 274 (3d Cir. 1990). But, as the Third Circuit subsequently explained in *Groman v. Township of Manalapan*, 47 F.3d 628, 634 n.5 (3d Cir. 1995), *Brown* affirmed "the district court's holding that plaintiff's claim was frivolous because it was based on plaintiff's bare assertion of police excessive force, was completely uncorroborated by other evidence, and plaintiff's recollection was dimmed by alcohol." Here, like in *Groman*, there is at least "some corroboration" of Leone's version of events by way of the MVR for Car #5. *See Groman*, 47 F.3d at 634 n.5 ("Here, there is some corroboration from Mrs. Groman on the initial altercation and from others on the injuries sustained."). Accordingly, "there are material issues of disputed fact and credibility determinations that cannot be decided on a motion for summary judgment." *Id.* at 634.

14

Lastly, Defendants are not entitled to summary judgment on the Fourth Amendment claim on the basis of qualified immunity. State actors sued in their individual capacity under § 1983 are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The doctrine of "qualified immunity . . . 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d Cir. 2004) (internal citation omitted)). In determining whether a defendant is entitled to qualified immunity, a court considers whether the official's acts violated a constitutional or statutory right and (if so) whether that right was clearly established at the time of the violation. *See Yarris v. County of Del.*, 465 F.3d 129, 140-41 (3d Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). A court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

As explained, a material factual dispute exists regarding whether Defendants violated Leone's right to be free from the use of excessive force. *See, e.g., Suarez v. City of Bayonne*, 566 F. App'x 181, 187 (3d Cir. 2014). And, regarding the "clearly established" prong of the qualified immunity question, the Third Circuit has noted that "the factors relevant to the excessive force analysis are well-recognized . . . ." *Couden*, 446 F.3d at 497. Thus, "[w]ere the jury to credit [Leone's] testimony, that finding would support the conclusion that [Defendants] used excessive force under clearly established law." *Suarez*, 566 F. App'x at 186; *Epifan v. Roman*, No. 11-2591, 2014 WL 4828606, at *15 (D.N.J. Sept. 29, 2014) (same); *Scutella v. City of Erie Bureau of Police*, No. 11-198, 2014 WL 5425626, at *8 (W.D. Pa. Oct. 22, 2014) (denying motion for summary judgment on qualified immunity

grounds because "it simply is not clear what were the circumstances under which Officer Cousins used his Taser on the Plaintiff and therefore, there exists a genuine issue of material fact as to whether or not Officer Cousins used excessive force when he tased Plaintiff."); *Wilhere v. Delaware Cnty.*, No. 09-22, 2010 WL 1381664, *7 (E.D. Pa. Apr.1, 2010) (denying summary judgment on qualified immunity defense because factual disputes remained about "whether Mr. Wilhere was informed that he was under arrest before he was tasered, whether Mr. Wilhere actively resisted such arrest, whether Mr. Wilhere posed an immediate threat to the safety of the deputies or others, and the level and detail of each deputies' participation in the "struggle" surrounding the tasering."). Defendants' motion for summary judgment on the Fourth Amendment claim on qualified immunity grounds will be denied.

**B.   State Law Claims**

Defendants also seek summary judgment on Leone's state law assault and battery claims. According to Defendants, summary judgment on the state law claims is warranted on the basis of state law sovereign immunity. Specifically, Defendants cite 1 Pa. Cons. Stat. Ann. § 2310, which provides:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 Pa. Cons. Stat. Ann. § 2310.

The Sovereign Immunity Act states that, except as otherwise provided therein, no statutory provision "shall constitute a waiver of sovereign immunity." 42 Pa. Cons. Stat. Ann. § 8521(a). The provision waiving sovereign immunity in certain instances is codified at 42

Pa. Cons. Stat. Ann. § 8522(a), and provides:

> The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

42 Pa. Cons. Stat. Ann. § 8522(a).[1]  "Commonwealth party" is defined by statute as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa. Cons. Stat. Ann. § 8501.  As such, "[s]overeign immunity 'protects the Commonwealth and Commonwealth parties from suit unless the cause of action falls within one of several statutory exceptions, or the individual's conduct falls outside the scope of his employment.'" *Bolden v. Pa. Bureau of Prisons*, No. 11-0467, 2011 WL 4974489, at *4 (E.D. Pa. Oct.19, 2011) (quoting *Wesley v. Hollis*, No. 03-3130, 2007 WL 1655483, at * 14 (E.D. Pa. June 6, 2007)).

> Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another; it is not unexpected by the employer.

*Natt v. Labar*, 543 A.2d 223, 213-14 (Pa. Cmwlth. Ct. 1988) (citing *Fitzgerald v. McCutcheon*, 410 A.2d 1270 (Pa. Super. Ct. 1979)).  "This language suggests that when the use of force is involved, the scope of an individual's employment depends on the expectations of his or her employer." *Zion v. Nassan*, 283 F.R.D. 247, 266 (W.D. Pa. 2012).

---

[1] The statutory waiver of sovereign immunity contained in § 8522(b) includes:  (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. Ann. § 8522(b)(1)-(9).  These exceptions are not applicable in this case.

As explained by one district court, "[t]he extent to which the intentional use of 'force' is properly characterized as an act within the scope of one's employment depends on the extent of an employer's expectation of force rather than on the extent of an employer's authorization of force." *Strothers v. Nassan*, No. 08-1624, 2009 WL 976604, at *8 (W.D. Pa. Apr. 9, 2009). And, where "the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law. If an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment." *Id*. at *9 (citation omitted). Furthermore, "'the question of whether an individual has acted within the scope of his or her employment is ordinarily a question of fact for the jury to decide.'" *Id*. (citing *Orr v. William J. Burns Int'l Detective Agency*, 337 Pa. 587, 12 A.2d 25, 27 (Pa.1940)).

Here, factual issues exist as to whether Defendants' actions were actuated by an intent to serve their employer and whether the use of force was expected by their employer. In particular, if the jury were to adopt Leone's version of the facts regarding the events during his first visit to the hospital and outside the Towanda barracks, the jury could find Defendants used force for personal reasons or in an outrageous manner. Likewise, in view of the MVR for Car #5, a reasonable jury could conclude that Defendants' use of force was excessive and without responsibility or reason. Further, the audio for the MVR for Car #5 which appears to capture Stipcak telling Leone that "you have a long fucking night ahead of you" could lead a jury to conclude that the use of force against Leone was based on personal reasons and not actuated by Defendants' intent to serve their employer. Accordingly, Defendants' motion for summary judgment on the state law claims based on sovereign immunity will be denied. *See, e.g., Bowman v. Reilly*, No. 09-1322, 2010 WL 831412, at *9-10 (E.D. Pa. Mar. 4, 2010).

### IV. Conclusion

For the above stated reasons, Defendants' motion for summary judgment on Leone's due process claim will be granted. Defendants' motion will be denied in all other respects.

An appropriate order follows.

January 6, 2015  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge