**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT LEONE, | |
| Plaintiff, | CIVIL ACTION NO. 3:12-cv-0429 |
| v. | (JUDGE CAPUTO) |
| TOWANDA BOROUGH, et al., | |
| Defendants. | |

## **MEMORANDUM**

Presently before me is Plaintiff Robert Leone's Motion to Open Judgment and for a New Trial. (Doc. 124). In his Complaint, Plaintiff alleged that he was battered and assaulted by various Pennsylvania State Police employees and Towanda Borough Patrolmen ("Defendants"), following his arrest on March 8, 2010. (Doc. 1). In 2015, a jury rendered a verdict in favor of Defendants and against Plaintiff. (Doc. 120). Now, acting *pro se*, Plaintiff files a motion to open judgment and for a new trial. (Doc. 124). Because he fails to establish the type of rare circumstances that warrant the reopening of a final judgment or a grant of a new trial, his motion will be denied.

## **I. Background**

Because the parties have already been through a trial, only a brief summary of the facts necessary to the resolution of the instant motion will be provided. The factual background was also set forth in my prior opinions. *See Leone v. Stipcak*, 2015 WL 75159 (M.D. Pa. Jan. 6, 2015); *Leone v. Towanda Borough*, 2012 WL 2590387 (M.D. Pa. July 3, 2012); *Leone v. Towanda Borough*, 2012 WL 1123958 (M.D. Pa. Apr. 4, 2012).

On March 8, 2010, Plaintiff decided to go for a drive through the mountains of northeastern Pennsylvania. (Doc. 1, *Compl.*, ¶ 23.) Shortly thereafter, he was involved in a minor traffic accident. (Doc. 47, *Defendants' Statement of Material Facts*, "*Defs.' SMF*", ¶¶ 12-13; Doc. 54, *Plaintiff's Statement of Material Facts*, "*Plf.'s SMF*," ¶¶ 12-13.) Although Plaintiff now disputes his involvement, he gave a statement to his insurer admitting that he

had struck another vehicle. (Leone Dep., 221:2-14.) He was also convicted of one count of accident involving damage to attended vehicle in the Court of Common Pleas of Bradford County. (Defs.' SMF, ¶ 19; Plf.'s SMF, ¶ 19).

Shortly after the accident, Pennsylvania State Police Troopers pulled behind Plaintiff's vehicle with their lights and sirens activated. (Defs.' SMF, ¶ 24; Plf.'s SMF, ¶ 24.) Plaintiff noticed the flashing lights of the police vehicles behind him, but because he was on probation for a DWI and restrictions on his license provided that he was not to drive outside of Broome County, New York, he became scared and failed to stop for the police. (Defs.' SMF, ¶ 28; Plf.'s SMF, ¶ 28). Instead, he continued driving for approximately thirty minutes at speeds between twenty and fifty miles per hour. (Defs.' SMF, ¶¶ 31-32; Plf.'s SMF, ¶¶ 31-32). The troopers attempted unsuccessfully to pull in front of Plaintiff's vehicle and conduct a rolling roadblock. (Defs.' SMF, ¶¶ 38-40; Plf.'s SMF, ¶¶ 38-40).

Corporal Roger Stipcak ("Stipcak") was the patrol supervisor on March 8, 2010. He, along with Trooper Matthew Knock ("Knock"), deployed tire deflating spike strips along Route 6 in an attempt to stop Plaintiff's vehicle. (Defs.' SMF, ¶¶ 36-37, 44; Plf.'s SMF, ¶¶ 36-37, 44). After the spike strips failed to stop Plaintiff's vehicle, Stipcak decided to ram Plaintiff off the road, and caused Plaintiff's vehicle to spin out and come to a stop. (Defs.' SMF, ¶¶ 49-53; Plf.'s SMF, ¶¶ 49-53.)

The parties largely dispute the events that unfolded thereafter. In his Complaint, Plaintiff claimed he was repeatedly beaten, assaulted, Tased, "hogtied," and sprayed with mace over the course of nine hours while in the custody of the Pennsylvania State Police. (Doc. 1, ¶¶ 36-115). Defendants, on the other hand, claim that Plaintiff was aggressive, belligerent, uncooperative, and at times attempted to flee and assault the officers. (Doc. 48, at 11-16). They also claim that he had high levels of amphetamines in his system at the time of his arrest (*Id.* at 9-10).

Plaintiff was ultimately charged with a number of offenses, and a jury found him guilty of the charges involving damage to another vehicle, fleeing or attempting to elude a police officer, resisting arrest, and simple assault. (Leone Dep., Ex. 2)

In view of the foregoing events, Plaintiff commenced this action on March 7, 2012, setting forth claims for violations of Plaintiff's Fourth and Fourteenth Amendment rights, as well as state law claims for assault, battery, and concerted tortious conduct. (Doc. 1).

Plaintiff commenced this action against Towanda Borough, two Borough police officers, the Pennsylvania State Police ("PSP") Troop Commander Sands, Corporal Thomas Jordan, Trooper Young, Corporal Stipcak, Trooper Renfer, Trooper Burian, Trooper Knock, and Trooper Warnick. After a lengthy discovery period, the parties jointly stipulated to the dismissal of the Borough defendants (Doc. 38) and PSP defendants Sands, Jordan, and Young with prejudice (Doc. 45). The matter continued to summary judgment against the remaining five PSP defendants.

Following Defendants' motion for summary judgment, the matter was scheduled for trial on the excessive force and state tort related claims. A jury trial was held beginning May 11, 2015. On May 18, 2015 the jury rendered their verdict in favor of Defendants and against Plaintiff. (Doc. 120).

On June 15, 2015, Plaintiff, acting *pro se*,[1] filed the instant motion to open judgment and for a new trial. (Doc. 124). The motion has now been fully briefed and is ripe for disposition.

## II. Plaintiff's Motion for a New Trial

**A.    Legal Standard**

Under Fed. R. Civ. P. 59, a court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." *See* Fed. R. Civ. P. 59. Thus, a new trial will commonly be granted (1) when the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice, *Roebuck v. Drexel Univ.*, 852 F.2d 715, 717 (3d Cir.1988); (2) when improper conduct by an attorney or the court unfairly influenced the verdict, *Fineman v.*

---

[1] On June 16, 2015 Plaintiff's counsel moved to withdraw their representation and the following day the motion was granted. (Docs. 125, 126).

*Armstrong World Indus., Ind.*, 980 F.2d 171, 207 (3d Cir.1992); (3) when the jury verdict was facially inconsistent, *Mosley v. Wilson*, 102 F.3d 85, 90 (3d Cir.1996); or (4) where a verdict is so grossly excessive or inadequate "as to shock the judicial conscience," *Savarese v. Agriss*, 883 F.2d 1194, 1205 (3d Cir.1989). A new trial may also be warranted based "upon [a] showing that the jury verdict resulted from passion or prejudice." *Evans v. Port Auth. of New York & New Jersey*, 273 F 3d 346, 352 (3d Cir. 2001) (citations and internal quotations omitted).

The decision to grant a new trial is within the sound discretion of the trial court, and such requests are disfavored. *Allied Chem. Corp. v. Daiflon, Inc.*, 448 U.S. 33, 36 (1980); *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995)); *Bonjorno v. Kaiser Aluminum and Chemical Corp.*, 752 F.2d 802, 812 (3d Cir. 1984). "[W]here the evidence is in conflict, and subject to two or more interpretations, the judge should be reluctant to grant a new trial." *Klein v. Hollings*, 992 F.2d 1285, 1295 (3d Cir.1993) (citation omitted). "This limit upon the district court's power to grant a new trial seeks to ensure that a district court does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury." *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 201 (3d Cir. 1996) (quoting *Fineman v. Armstrong World Indus., Inc.*, 980 F.3d 171, 211 (3d Cir. 1992)).

**B.   Discussion**

Plaintiff alleges that "his attorneys so mishandled the case, and committed such extreme and egregious errors, that they virtually abandoned him, and left him without the assistance of competent counsel." (Doc. 132, at 1). Specifically, Plaintiff argues that his counsel were negligent because of several strategic litigation decisions they made leading up to and during trial, including their failure to pursue Plaintiff's claims of sexual abuse that allegedly occurred while he was in the custody of Defendants, failure to present Plaintiff or his mother to testify at trial, and failure to call to the stand the public defender who represented Plaintiff during his criminal proceedings to question her "about some of her trial strategies." (*Id*. at 11).

Defendants claim that Plaintiff's "claims are either baseless or a complete confused

perception of the events in this case." (Doc. 138, at. 4). Indeed, Plaintiff has failed to show that the jury verdict was against the weight of the evidence, nor has he directed me to any authority suggesting that a district court is allowed to grant a new trial under Rule 59 based merely on a losing party's allegation that his own counsel performed below his expectations. Unsatisfactory performance of an attorney does not rise to the level of misconduct warranting a new trial unless "the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 128 (3d Cir. 2003) (citation omitted). After a careful examination of the record and Plaintiff's allegations, I find no miscarriage of justice, nor is my conscience shocked by the verdict. Thus, I will deny the motion for a new trial.

In support of his allegations, Plaintiff attached to his motion a two-hour long video featuring an interview with his mother.[2] Although the video is neither evidence nor a proper affidavit, the substance of Plaintiff's assertions is found therein.

Plaintiff's most serious allegation concerns his attorneys' failure to pursue his claims of sexual abuse that he alleges occurred at the State Police Barracks following his arrest on March 8, 2010. (Doc. 132, at 3-4). Plaintiff claims that "the evidence that was submitted . . . show that there was an enormous amount of evidence" for the allegations of sexual abuse. (Doc. 140, at 1). After careful examination, however, this "enormous amount of evidence" is nothing more than a few inadmissible hearsay statements strung together with Plaintiff's unsubstantiated "funny suspicion[s]." (Doc. 134, "*CD*," at 1:06:50). There was no basis for the attorneys to pursue this claim down the rabbit hole of unsupported accusations.[3] For instance, one piece of evidence is Plaintiff's mother's belief that during

---

[2] Plaintiff also claims to have attached a video recording of himself, (Doc. 140, at 1), but no such video exists in court records. (*See* Doc 134, "*Joan Leone, September 19, 2015*" *Compact Disc* ("*CD*")).

[3] I note here that I do not make a determination whether any sexual abuse occurred; rather, I only determine whether there is sufficient basis to warrant a new trial. There is not.

5

the alleged rape, Plaintiff's "soul left [his] body and went up to the ceiling" and observed how his "female side," represented by an image of a girl, was being raped by two of the Defendants. He then, according to Plaintiff's mother, proceeded to "heal" the girl with "God's white light." (Doc. 134, "*CD*," at 1:07:48-1:08:46). Such statements have no evidentiary value and would be inadmissible.

Plaintiff's two other pieces of evidence for the proposition that he was sexually abused by the troopers in the barracks include "nightmares recalling sexual abuse" and claims of "repressed memory recall." (Doc. 132, at 3). However, despite popular misconceptions, there is little empirical support for memory repression.[4] In fact, there is no evidence to support their authenticity or veracity.[5] Plaintiff's attorneys were correct in their decision not

---

[4] *See, e.g.* McNally, R. J. (2005). *Debunking myths about trauma and memory*. Canadian Journal of Psychiatry, 50 (13), 817-22; Clancy, S. A. &McNally, R. J. (2005). *Who needs repression? Normal memory processes can explain "forgetting" of childhood sexual abuse*. Scientific Review of Mental Health Practice, 4(2), 66-73; Brainerd, C. J. and Reyna, V. F. (2005). The Science of False Memory, Oxford Psychology Series #38. Oxford University Press; McGaugh, J.L. (2003). *Memory and emotion: The making of lasting memories*. New York: Columbia University Press; Frankel, F. H. (1993). *Adult reconstruction of childhood events in the multiple personality literature*. American Journal of Psychiatry, 150 (6), 954-58; Holmes, D. (1990). *The evidence for repression: An examination of sixty years of research*. In J. Singer (Ed.), Repression and Dissociation. Chicago: University of Chicago Press; Lindsay, D. S. & Read, J. D. (1995). *'Memory work' and recovered memories of childhood sexual abuse: Scientific evidence and public, professional, and personal issues*. Psychology. Public Policy, and the Law, 1 (4), 846-908; Lindsay, D. S. & Read, J. D. (1994). *Psychotherapy and memories of childhood sexual abuse: A cognitive perspective*. Applied Cognitive Psychology, 8 (4), 281-338; McNally, R. J. (2003). *Remembering Trauma*. Cambridge, MA: Harvard University Press; Pendergrast, M. (1996). *Victims of Memory*. Hinesburg, VT: Upper Access Books; Pope, H. G. & Hudson, J. I. (1995). *Can memories of childhood sexual abuse be repressed?* Psychological Medicine, 25, 121-26; Pope, H. G. et al. (1999). *Attitudes toward DSM-IV dissociative disorders diagnoses among board-certified American psychiatrists*. American Journal of Psychiatry, 156 (2), 321-23; Tillman, J. G., Nash, M. R. &Lerner, P. M. (1994). *Does trauma cause dissociative pathology?* In S. Lynn and J. Rhue (Eds.), Dissociation: Clinical, Theoretical and Research Perspectives. New York: Guilford Press, 395-414.

[5] Holmes, D. S. (1990). *The evidence for repression: An examination of sixty years of research*. In J. L. Singer (Ed.) Repression and dissociation: Implications for personality theory, psychopathology and health. University of Chicago Press; Lindsay, D. S. & Read, J.

to pursue this line of argument.

Another repeated allegation leveled against Plaintiff's attorneys is their failure to present Plaintiff's mother to testify at trial. According to Plaintiff, his mother "was very intimately involved in this case the entire time, from the day of the incident and on, and witnessed many facts, including the severe damages and injuries of [her adult son], and his recounting of the story over the years, and many other facts and events relating to the case." (Doc. 132, at 8). However, having reviewed the two-hour long interview of Plaintiff's mother, I am convinced that only a minuscule portion of it would constitute admissible and relevant testimony at trial.

The mother has no direct knowledge of the core events in this case; she was not a witness to any of the events, nor could she permissibly testify to the traffic incident, the altercation between the officers and her son, or the events in the barracks. According to her, she could testify to those events because her adult son *told* her about them "over the years." (Doc. 132, at 8). She is wrong.

Her testimony would be futile because what she could permissibly testify to under the Federal Rules of Evidence is of little evidentiary value to the determination of whether excessive force was used on the night of March 8, 2010. Moreover, what she could permissibly testify to had arguably already been covered by the testimony of Plaintiff's father.

Plaintiff's mother is convinced that she was barred from testifying by her son's attorneys, but fails to understand that she would have been barred from presenting most of her testimony by this Court's rules of evidence, which prohibit lay opinion testimony,

---

D. (1994). *Psychotherapy and memories of child sexual abuse: A cognitive perspective*. Applied Cognitive Psychology 8, 281-338; Lindsay, D. S. & Read, J. D. (1995). *Memory work and recovered memories of childhood sexual abuse: Scientific evidence and public, professional and personal issues*. Psychology, Public Policy and Law, 1, 846-908; Pope, H. G. Jr, Hudson, J.I.(1995). *Can memories of childhood sexual abuse be repressed?* Psychological Medicine, 15, 121-6; Tillman, J. G., Nash, M. R., and Lerner, P. M. (1994). *Does trauma cause dissociative pathology*? In S. J. Lynn and J. W. Rhue (Eds.) Dissociation: Clinical and theoretical perspectives, 395-414. New York: Guilford Press.

7

matters outside of personal knowledge, and hearsay.[6] It is a permissible tactic not to call a witness who strongly believes she is entitled to inject her own narrative and introduce her opinions, beliefs, digressions, musings, diagnoses, and interpretations into the case. To not call Plaintiff's mother to the stand was within the broad discretion of the trial attorneys, and I will not second-guess their permissible tactical decisions.

The same is true of Plaintiff's testimony. While there is a wealth of information that the jury could have learned from Plaintiff, the decision not to call him was a permissible decision of his attorneys. There are many legitimate reasons why a party is not called to testify; the risk of a jury not believing the party and the dangers of damaging evidence emerging through cross-examination may outweigh the advantages of taking the stand. Most importantly, Plaintiff's attorneys' decision to not call Plaintiff to testify on his behalf does not rise to the level of "miscarriage of justice" or "shock to the conscience."

Most of the other allegations Plaintiff presents are baseless. He believes that his attorneys "were somehow deliberately involved in the loss of the case." (Doc. 132. at 12). However, besides his *belief*, Plaintiff presents no evidence to support this serious accusation.

Plaintiff also claims that his attorneys should have called the public defender who represented Plaintiff during his criminal proceedings, to question her "about some of her trial strategies." (Doc. 132, at 11). Such demands are misguided. Plaintiff's claims regarding the public defender's performance during Plaintiff's criminal trial are wholly irrelevant to whether or not excessive force was used on the night of March 8, 2010, which was the issue before the jury in the instant case. Plaintiff and his family insisted that his civil trial be transformed into a public airing of their grievances against the public defender and, subsequently, an

---

[6] *See, e.g.*, Rule 602. Need for Personal Knowledge: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." "This means that a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact." McCormick §10, p. 19.

indictment for her alleged missteps. Plaintiff's civil rights suit, however, was not a forum to prosecute his malpractice claims. Likewise, the proper forum and remedy for allegedly inadequate representation in the instant civil case is a separate malpractice action, not a motion for a new trial. *Robinson v. Johnson,* 449 F. App'x 205, 207 (3d Cir. 2011). This is because, unlike a criminal defendant, a civil litigant does not have a constitutional right to effective assistance of counsel. *Kushner v. Winterthur Swiss Ins. Co.*, 620 F.2d 404, 408 (3d Cir.1980).

The sanctity of the jury verdict cannot be disturbed by blaming an unfavorable verdict on dissatisfaction with counsel's representation, especially when it involves permissible tactical litigation decisions aimed to further the client's interest. The burden to establish the basis for a new trial is a heavy one and involves "miscarriage of justice" or "shock to the conscience," not mere disagreement about trial tactics. The decisions Plaintiff's attorneys made, even if assumed *arguendo* to constitute inexperience or incompetence, do not cross the line into "miscarriage of justice" or "a shock to the conscience," warranting a new trial. Most notably, it is not a miscarriage of justice or a shock to the conscience to receive a jury verdict different from the one fervently hoped for. As such, Plaintiff is unable to meet his burden, and a new trial will not be granted.

### III. Plaintiff's Motion for Relief from Judgment

**A.    Legal Standard**

Fed. R. Civ. P. 60(b) provides for relief from judgment or order within the district court's discretion for:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

The general purpose of Rule 60 is to "strike a proper balance between the conflicting

indictment for her alleged missteps. Plaintiff's civil rights suit, however, was not a forum to prosecute his malpractice claims. Likewise, the proper forum and remedy for allegedly inadequate representation in the instant civil case is a separate malpractice action, not a motion for a new trial. *Robinson v. Johnson,* 449 F. App'x 205, 207 (3d Cir. 2011). This is because, unlike a criminal defendant, a civil litigant does not have a constitutional right to effective assistance of counsel. *Kushner v. Winterthur Swiss Ins. Co.*, 620 F.2d 404, 408 (3d Cir.1980).

The sanctity of the jury verdict cannot be disturbed by blaming an unfavorable verdict on dissatisfaction with counsel's representation, especially when it involves permissible tactical litigation decisions aimed to further the client's interest. The burden to establish the basis for a new trial is a heavy one and involves "miscarriage of justice" or "shock to the conscience," not mere disagreement about trial tactics. The decisions Plaintiff's attorneys made, even if assumed *arguendo* to constitute inexperience or incompetence, do not cross the line into "miscarriage of justice" or "a shock to the conscience," warranting a new trial. Most notably, it is not a miscarriage of justice or a shock to the conscience to receive a jury verdict different from the one fervently hoped for. As such, Plaintiff is unable to meet his burden, and a new trial will not be granted.

### III. Plaintiff's Motion for Relief from Judgment

**A.    Legal Standard**

Fed. R. Civ. P. 60(b) provides for relief from judgment or order within the district court's discretion for:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

The general purpose of Rule 60 is to "strike a proper balance between the conflicting

principles that litigation must be brought to an end and that justice must be done." *Boughner v. Secretary of Health, Ed. & Welfare*, 572 F.2d 976, 977 (3d Cir.1978). The rationale underlying the rule is to ensure that judgments are based on the true merits of the case. *Bachman Co. v. McGonigle*, 855 F. Supp. 759, 763 (E.D. Pa. 1994) (citation omitted). Generally, a motion brought pursuant to Rule 60 is "addressed to the sound discretion of the Court and is reviewable on appeal only for abuse of discretion." *Virgin Island Nat'l Bank v. Tyson*, 506 F.2d 802, 804 (3d Cir.1974).

**B. Discussion**

Plaintiff argues that he is entitled to reopen the litigation because his counsel acted negligently, abandoned him, and compromised the case. (Doc. 132, at 1). However, none of the grounds specified in Rule 60 seem apposite to the contentions in Plaintiff's motion.

Plaintiff offers no newly discovered evidence that was previously unavailable. Fed. R. Civ. P. 60(b)(2). He does not allege fraud, misrepresentation, or misconduct by the opposing party, Fed. R. Civ. P. 60(b)(3), nor does he claim that the judgment is void, Fed. R. Civ. P. 60(b)(4), or has been satisfied, released, or discharged. Fed. R. Civ. P. 60(b)(5).

Subsection (1) of Rule 60(b), which allows a court to grant relief from order or judgment in cases of mistake, inadvertence, or excusable neglect, provides for extraordinary relief which may only be granted upon showing of exceptional circumstances, *Brest v. Philadelphia Transp. Co.*, 24 F.R.D. 47 (E.D. Pa. 1959), and none exist here. Plaintiff fails to establish the kind of circumstances that warranted the grant of a motion for relief in other cases. *See, e.g., Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981) (counsel "withdrew" from the case without being relieved as attorney of record or informing defendants and defendants did not receive notice of trial); *Ellingsworth v. Chrysler*, 665 F.2d 180 (7th Cir. 1981) (counsel and his client failed to appear at trial as a result of excusable mistake); *Spika v. Vill. of Lombard, Ill.*, 763 F.2d 282 (7th Cir. 1985) (counsel failed to check the status of the case for six months); *Nelms v. Baltimore & O. R. Co.*, 11 F.R.D. 441 (N.D. Ohio 1951) (counsel dismissed the case without knowledge or consent of plaintiff); *In re Enerco, Inc.*, 43 B.R. 412 (Bankr. N.D. Tex. 1984) (counsel failed to monitor bankruptcy

court's docket to ascertain the status of the case); *James v. United States*, 215 F.R.D. 590 (E.D. Cal. 2002) (attorney disappeared from the state, did not have malpractice insurance, failed to respond to government's requests for admissions, failed to oppose the motion to dismiss that led to judgment, and misrepresented to patient that case was proceeding smoothly).

Most importantly, Rule 60(b)'s subsection providing for relief from judgment on ground of mistake, inadvertence, or excusable neglect is not intended to give relief to for deliberate actions which in retrospect appear unfortunate, or even unwise. *Sadowski v. Bombardier Ltd.*, 539 F.2d 615 (7th Cir. 1976); *Fed.'s Inc. v. Edmonton Inv. Co.*, 555 F.2d 577 (6th Cir. 1977). Justice demands only that a party not be disadvantaged by errors or neglect of his attorney which cause final, involuntary termination of proceedings. *United States v. Moradi*, 673 F.2d 725 (4th Cir. 1982). Here, no involuntary termination occurred. Counsel was present, actively participated in, and saw the case through to completion; Plaintiff's suit was disposed of on the merits by a jury, rather than through negligence of his attorneys and involuntary dismissal of proceedings.

Plaintiff repeatedly references this Circuit's *Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805 (3d Cir. 1986) for the proposition that the "Federal Rules of Civil Procedure can be used as an 'escape hatch' from the general rule which holds a party accountable for the acts of its lawyer." (Doc. 124, ¶ 3). However, Plaintiff's reliance on *Carter* is inapposite. In *Carter*, the Third Circuit held that a client's suit should be reinstated after his racial discrimination in employment termination case was dismissed by the district court as sanction against the client's attorney's discovery violations. The court held that the Rules provide an "escape hatch" in instances where "a client [is] victimized by his attorney's extreme negligence," in the context of "visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault." *Carter*, 804 F.2d at 807. Those circumstances do not apply to this case. In contrast to *Carter*, there were no discovery violations in the instant case, no sanctions upon a delinquent lawyer which victimize the client, no conduct that was flagrant and deserving of sanctions, nor was the case dismissed

before it reached the jury.

Plaintiff also relies on a number of cases for the proposition that his attorneys "virtually abandoned" him. (Doc. 132, at 5-6). However, the cases cited by Plaintiff are, again, inapplicable here. They refer to instances where counsel failed to oppose summary judgement resulting in judgment against the plaintiff, *Boughner v. Secretary of Health, Ed. & Welfare*, 572 F.2d 976 (3d Cir. 1978), or failed to file a timely notice of appeal or, in the alternative, withdraw to allow the plaintiff to proceed *pro se*, *Mackey v. Hoffman*, 682 F.3d 1247 (9th Cir. 2012). No such flagrant conduct occurred here.

Finally, Rule 60(b)(6), which provides for relief from judgment for "any other reason" is very limited in nature. Relief from judgment under Rule 60(b)(6) applies only in "exceptional" or "extraordinary circumstances" where principles of equity mandate relief, and is circumscribed by public policy favoring finality of judgments and termination of litigation. *See In re Fine Paper Antitrust Litig.*, 840 F.2d 188 (3d Cir.1988) (quotation omitted); *see also Vecchione v. Wohlgemuth*, 558 F.2d 150, 158 (3d Cir. 1977); *Marshall v. Bd. of Ed., Bergenfield, N. J.*, 575 F.2d 417, 426 (3d Cir. 1978); *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 273 (3d Cir.2002); *Panton v. Matlack*, 2007 U.S. Dist. LEXIS 92003, at *5, 2007 WL 4414224 (M.D. Pa. Dec. 14, 2007).

Here, Plaintiff failed to proffer any exceptional or extraordinary circumstances which would justify relief under Rule 60(b)(6). Plaintiff was represented by three attorneys through years of motion practice, depositions, and discovery. His counsel filed and successfully argued several motions *in limine*, (Doc. 101), a motion to allow live testimony via audiovisual transmission (Doc. 106), argued against a grant of summary judgment (Doc. 61), and successfully defended a motion to dismiss (Doc. 21). They also took part in all pretrial meetings and proceedings, and all three counsel meaningfully participated in the six-day jury trial. I do not agree that the outcome of this suit was the result of "virtual abandonment" by counsel.

In sum, none of the grounds enumerated in Fed. R. Civ. P. 60(b) apply to the instant case, and Plaintiff cites to no case indicating otherwise. Because Plaintiff fails to establish

the type of rare circumstances which would warrant the reopening of a final judgment, his motion for relief from judgment will be denied.

## IV. Conclusion

For the above-stated reasons, Plaintiff's motion to open judgment and for a new trial (Doc. 124) will be denied.

An appropriate order follows.

October 11, 2016 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge